# SMITH *et al.* v. KENNEDY.

No. 3860.   Opinion Filed May 18, 1915.

(149 Pac. 197.)

1. **ACTION—Causes of Action—Misjoinder—Trusts.** Where two persons purchase, by separate deeds, the interest of certain heirs in an undivided parcel of land, an action in the name of such vendees and the heirs to declare the purchaser of the same land from another person a trustee is not a misjoinder of causes of action.

2. **PUBLIC LANDS—Patents—Grantee—Trustee—Jurisdiction in Equity.** Courts of equity have jurisdiction to declare the grantee in a patent issued by the government a trustee for the true owner, where such patent is issued on an erroneous view of the law.

3. **INDIANS—Indian Lands—Purchase of Town Lots—Personal Right—Partnership.** The right of a Cherokee Indian citizen to purchase town lots of which he is in rightful possession, and on which he has made permanent improvements, as provided by Act July 1, 1902, c. 1375, sec. 43, 32 Stat. 723, at half of the appraised valuation, is the personal right of the Indian by reason of the blood of his tribal parent. So, where a citizen by blood of the Cherokee Nation and a non-citizen occupy certain lots, on which they are carrying on business, which lots are scheduled to them jointly, it is error in law to issue the patent to the non-citizen member of the firm, as surviving partner, after the death of the Indian citizen.

5. **INDIANS—Indian Lands—Patent for Town Lots—Joint Occupants.** Where in such case the patent is issued, it relates back to the application for and scheduling of the lots, and where the lots are applied for and scheduled in the name of the Indian citizen and the non-citizen as joint occupants, it is error in law to issue the patent to one of them only.

5. **APPEAL AND ERROR—Decisions Appealable—Order Sustaining Demurrer.** An appeal may be taken from an order sustaining a demurrer to a petition prior to the entry of final judgment against the pleader.

(Syllabus by Devereaux, C.)

Smith et al. v. Kennedy.

*Error from District Court, Sequoyah County;*

*J. H. Pitchford, Judge.*

Action by James A. Smith and others against A. J. Kennedy. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

The petition alleges, in substance, so far as material to the questions here presented, that Pleasant N. Blackstone was a duly enrolled citizen of the Cherokee Nation by blood, and that, in conjunction with one Clarence W. Turner, he was in the rightful and joint possession of certain lots within the town site of Vian, in the Cherokee Nation, at the time of the act of Congress of June 28, 1898, and was in the possession of the land until his death on April 21, 1904; that Blackstone was duly enrolled as a Cherokee citizen by blood, and was entitled, under section 43 of the act of July 1, 1902, ratified by an election of the Cherokee Nation on August 7, 1902, to purchase this land by paying one-half of the appraised value, on account of his rightful possession and permanent improvements placed thereon, that Turner was not a citizen of the Cherokee Nation; that shortly after his death, on April 21, 1904, Blackstone made application to the town-site commission for the town of Vian to purchase an undivided half interest in the lots at one-half of the appraised value, as provided by section 43 of the Cherokee Agreement, and that Turner joined in this application, and that the town-site commission scheduled the lots to Blackstone and Turner, subject to the approval of the Interior Department, which schedule was made to Turner and Blackstone as Cherokee Citizens at half of the appraised value; that objection was made by the Interior Department to scheduling these lots to Turner at half of their appraised value, because he was not a Cherokee by blood, but an intermarried citizen only; that the schedule of a one-half interest in these lots was approved to the heirs of Blackstone (who died during the pendency of the proceedings) on August 15, 1905, and the application of Turner

was withheld at his request pending the determination of his rights as an intermarried citizen; that afterwards it was decided that Turner did not have the right, as an inter-married citizen, to purchase these lots at half their appraised value, and the other half interest was then scheduled to Turner as a noncitizen under the proviso of section 43, Act July 1, 1902, and this was approved by the Secretary of the Interior on July 8, 1907; that on October 9, 1908, Turner, purporting to be the surviving partner of the firm of Blackstone & Co., composed of Pleasant N. Blackstone and Clarence W. Turner, conveyed the lots in question to the defendant, A. J. Kennedy, by deed purporting to vest the entire interest in these lots in the grantee, Kennedy. This deed was dated October 19, 1908, and was recorded October 20, 1908. The petition also alleges the conveyance by the heirs of Blackstone of their interest as such heirs to the plaintiffs Smith and Milton K. Thompson. The petition further alleges that on September 5, 1905, Blackstone's heirs were notified by the Commissioner of the Five Civilized Tribes that the lots in question had been scheduled to them, and a similar notice was issued to Turner, and that the first payment of the 10 per cent. must be made in 60 days, the second payment of 15 per cent. within 4 months, and the remainder in three equal annual installments; that the rules of the department do not allow one tenant in common to make payment of his *pro rata* share, but that payment of each installment must be made in full; and that plaintiffs have paid $868.00 to the government as payment for these lots, but that neither Turner nor Kennedy, the vendee of Turner, have ever paid any part thereof. The petition further alleges that on August 18, 1906, Turner instituted a contest against the Blackstone heirs to have these lots scheduled to him as surviving partner of Blackstone & Co., and attaches a transcript of the proceedings on this contest. The decision of the acting commissioner is, in part, as follows:

"Attempt is made by the surviving partner, Clarence W. Turner, to show that the late firm of Blackstone & Co. is insolv-

ent, and adjudged indebted to him and others, and asks that said lots be scheduled to him as surviving partner, to be applied because needed for the payment of partnership debts. This office cannot undertake, as a court of equity, to discover the assets of the defunct firm of Blackstone & Co., and compel an accounting between the surviving -partner and the heirs of the deceased partner, so as to determine whether these lots could be rescheduled to the surviving partner as assets in his hands to pay the late firm's indebtedness. His rights will remain unimpaired as well as those of the heirs, and these lots be scheduled to the rightful owners at date of the original schedule of the town lots of Vian, Cherokee Nation, March, 1904. This office does not concur in your recommendation that the above lots should be scheduled to Clarence W. Turner and the heirs of Pleasant N. Blackstone, and directs that the above lots be scheduled to 'Clarence W. Turner and Pleasant N. Blackstone, an undivided one-half interest in each as members of the firm of Blackstone & Co., and it is so ordered.

This decision was rendered on July 19, 1908. The petition further alleges that on September 16, 1908, and after the decision above set out of July 19, 1908, Hon. C. F. Larrabee, acting commissioner, by letter of that date, which is attached to the petition, and which was approved by the Secretary of the Interior on September 16, 1908, recommended that the deed to this land should issue to Clarence W. Turner and the heirs of Pleasant N. Blackstone. The petition further alleges that on November 28, 1910, a patent was issued, delivered, and recorded for this land to Clarence W. Turner, as and in the capacity of the surviving partner of Blackstone & Co. This deed recites:

"Whereas, the said Commission has awarded the real estate hereinbelow to Clarence W. Turner, as and in the capacity of surviving partner of the firm composed of said Clarence W. Turner and Pleasant N. Blackstone (now deceased), doing business under the firm name and style of Blackstone & Co., who has paid the sum of $1,738," etc.

The petition then challenges the authority of the Secretary of the Interior and the Chief of the Cherokee Nation to issue the

patent in this form, and that the order and approval of the Secretary of the Interior of September 16, 1908, above set out, was final, and that it was the duty of the Secretary to issue the patent according to this approval. The prayer of the petition material to the appeal was that the legal title vested in Kennedy, the vendee of Turner, be charged with a trust, and that Kennedy be declared a trustee for a one-half interest in these lands in behalf of the Blackstone heirs or their vendees.

In regard to lot 8 in block 23 (a part of this land) it appears that it was not scheduled to Blackstone or Turner, but was sold under the provisions of section 44 of the Cherokee Agreement, and was bought by A. J. Kennedy on behalf of Turner and the Blackstone heirs on May 31, 1905.

To this petition the defendants demurred: First, that the court has no jurisdiction of the action; second, that several causes of action are improperly joined, and that the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendants; third, that said petition is an effort of this court to set aside and go behind a patent issued by the Cherokee Nation and by the United States; fourth, that said petition does not state facts sufficient to warrant the court in the appointment of a receiver. The court sustained this demurrer in all things, except as to lot 8 in block 23, to which ruling exception was duly saved, and plaintiff elected to stand on the demurrer, and refused to further plead. The cause is brought to this court by proper proceedings in error.

*C. L. Thomas, S. V. O'Hare, W. L. Curtis, Mont F. Sharp, Geo. S. Ramsey,* and *A. A. Davidson,* for plaintiffs in error.

*Winchester & Martin,* for defendant in error.

DEVEREUX, C. (after stating the facts as above). The first question raised by the demurrer is to the jurisdiction of the

court. The power of a court of equity to declare the grantee in a patent issued by the government, or; in this case, by the chief of an Indian tribe, in pursuance of the authority derived from the government, a trustee, where the Department has proceeded on an error in law in issuing the patent, has been too long settled to require citation of authority. This disposes of the first ground of the demurrer.

The second ground is that several causes of action are improperly joined. It will be noted that the deed made by the Blackstone heirs for the property in controversy to Jas. A. Smith and Milton K. Thompson is for their undivided interest in this property. The object of the action is to attack a deed which would render these two deeds nugatory. In our opinion, the provision of our statute in regard to a misjoinder of causes of action is the same as the old equity rule against multifariousness, and consequently, where a bill in equity under the old practice was not multifarious, there is no misjoinder of causes of action under the code practice. In 8 Ecy. United States Sup. Court Reports, 535, it is said:

"The principle of multifariousness is one very largely for convenience, and is more often applied where two parties are attempted to be brought in by a bill in chancery who have no common interest in the litigation whereby one party is compelled to join in the expense and trouble of a suit in which he is codefendant, having no common interest, or in which one party is joined as complainant with another party with whom in like manner he either has no interest at all, or no such interests s required the defendant to litigate it in the same action."

See, also, *De Roberts v. Cross,* 23 Okla. 888, 101 Pac. 1114, and *Seibert v. Thompson,* 8 Kan. 66. Applying this principle to the case at bar, there is no misjoinder of actions in this petition.

The one remaining ground in this demurrer open for con-

sideration in this court is that the petition does not state facts sufficient to constitute a cause of action, and that the petition is an effort in this court to set aside and go behind the patent issued by the Cherokee Nation and by the United States. What has been said under the first ground of the demurrer, that the court has no jurisdiction, disposes of the third ground, that the petition is an effort in this court to set aside and go behind the patent.

This leaves the only other remaining ground now open; that is: Does the petition state facts sufficient to constitute a cause of action? We think it does. From the foregoing statement of facts it appears that the contest of Turner to have this land declared partnership assets was, in fact, rejected by the Commissioner of Indian Affairs on the very apparent ground that the Department could not administer the equities in this case between the heirs of Blackstone and the creditors of Blackstone & Co. The Secretary also directed the deed to issue to Clarence W. Turner and the heirs of Pleasant N. Blackstone, by his letter of September 15, 1908. Without further hearing, as far as this record discloses, or without any additional notice to the Blackstone heirs, the deed was issued to Clarence W. Turner as surviving partner of Blackstone & Co. This deed, it is true, was approved by the Secretary of the Interior, but the record is silent as to why this change was made.

But, under the law governing Indian allotments of this kind, could this right of Blackstone to purchase these lots at one-half of their appraised value become a partnership asset? In this case Blackstone, a citizen, and Turner, a noncitizen, were partners in the mercantile business, and they occupied these lots, as we gather from the record, for the purpose of their business. This does not carry the right which Blackstone had to purchase the lots at one-half of the appraised value, or at least his interest in them. Section 43, c. 1375 (32 Stat. L. pt. 1), provides:

"Any citizen in rightful possession of any town lot having improvements thereon other than temporary buildings, fencing, and tillage, the occupancy of which has not been acquired under tribal laws, shall have the right to purchase same by paying one-half of the appraised value thereof: Provided, that any other person in undisputed possession of any town lot having improvements thereon other than temporary buildings, fencing and tillage, the occupancy of which has not been acquired under tribal laws, shall have the right to purchase such lot by paying the appraised value thereof."

In the case at bar Blackstone did not acquire his right to purchase this property at one-half of its appraised value by reason of any partnership arrangement, or by anything whatever growing out of the partnership. As was said by the Supreme Court of the United States in the case of *McDougal v. McKay*, decided April 26, 1915, 236 U. S. ——, 35 Sup. Ct. 605, 59 L. Ed. ——:

"The right to the property antedates the allotment, and is simply given effect to by that act. Viewing the tribal property and its division in this light, Andrew J. Berryhill acquired his right to the land in question by his membership in the tribe. It was his birthright. It came to him by the blood of his tribal parent, and not by purchase."

See, also, *Shultis v. McDougal*, 170 Fed. 529, 95 C. C. A. 615. Applying this principle to the case at bar, the right of Blackstone to acquire the title to this property by paying one-half of the appraised value antedates the allotment and was his tribal right, and came to him by reason of his Indian ancestors. It is true that his possession with Turner was a joint possession, and Blackstone and his heirs only claim, and have only claimed from the outset, a one-half interest in the lots, that is, that they should have the right to acquire a one-half interest by paying half of the appraised value, while Turner, under the proviso of section 43, had the right to acquire the other one-half interest by paying the full appraised value. This right of Blackstone was derived from his Indian ancestors and from the act of Congress, and cannot in any sense be called a partnership asset, and it

appears from the petition, and is admitted by the demurrer, that the heirs of Blackstone have paid $868 on this purchase price. We cannot in this suit dispose of any of the equities between the creditors of Blackstone & Co. and Blackstone's heirs, if there are any; for this is an action in which the creditors are not parties, and the only object of which is to declare Turner's vendee a trustee for one-half interest in this property.

There is another question also presented by this record, and under which we think it was error for the court below to sustain the demurrer. It will be noted that this application and the schedule of these lots was to Turner and Blackstone. The case of *Arthur v. Coyne,* 32 Okla. 527, 122 Pac. 688, throws light on this question. In that case two tenants in common who owned an undivided interest in the improvements on, and the right of possession to, town lots in the city of Tulsa, scheduled them jointly. One of the codefendants fraudulently obtained a deed in his own name for the entire property, and the court held that he took the legal title as trustee for his codefendant as to one-half. In passing on this subject the court used this language:

· "Under the doctrine of relation, when the patent issued to defendant, it related back and took effect as of the date of the application for and scheduling of the lot, to wit, July 10, 1902. *Shepley v. Cowan,* 91 U. S. 330 [23 L. Ed. 424]; *Beard v. Federy,* 3 Wall. 478 [18 L. Ed. 88]," and other cases cited.

In the case at bar, under this rule, the patent issued to Clarence W. Turner as surviving partner of Blackstone & Co. related back to the original schedule, which was in the name of Blackstone & Turner as joint occupants, with the right of Blackstone to acquire his one-half interest by the payment of one-half of the appraised value of his interest, and of Turner acquiring his one-half interest by the payment of the entire appraised value of his interest. We therefore think there was error in overruling the demurrer. The demurrer was general to

the entire petition, and, if the petition stated any cause of action, it was good as against a general demurrer. The court held as to lot 8 in block 23, and, this being the case, the demurrer should have been overruled in any event.

There is no final judgment in the case, but we entertain the appeal under the doctrine of *Ashley Silk Co. v. Oklahoma Fire Ins. Co.,* 33 Okla. 348, 125 Pac. 449, which decides that an appeal may be taken from an order sustaining a demurrer to a petition prior to the entry of final judgment against the pleader. The title of lot 8 in block 23 is left open by the trial court, but this can be provided for upon the further hearing of the case.

We, therefore, recommend that the judgment be reversed, and this cause remanded for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.