**SAFEWAY CAB CO. et al. v. McCONNELL.**

No. 27552. Jan. 4, 1938.

Withdrawn, Modified, Refiled, and Rehearing Denied Feb. 1, 1938.

George F. Short and Welcome D. Pierson, for plaintiffs in error.

Ben F. Williams, Homer Cowan, and T. R. Benedum, for defendant in error.

PHELPS, J. The plaintiff received personal injuries from being struck by a taxicab within the city limits of Norman, Okla., for which she recovered a verdict and judgment, and the defendants appeal. It is not contended that the evidence was insufficient to sustain the finding of negligence, and it therefore is unnecessary to relate the details of the accident.

The city of Norman had an ordinance requiring, as a condition precedent to the issuing of any license to operate a taxicab, the filing of an insurance policy with the city clerk,

"providing insurance coverage for each and every taxicab owned, operated or leased by the applicant with a maximum liability of $5,000 for the injury or death of any one person * * * in any one accident, regardless of whether the taxicab was being driven by the owner, his servant, agent, or lessee."

The defendant taxicab company had filed such a policy with the city clerk, covering the cab in question, and the insurance company was named a party defendant in this action with the taxicab company and others. It is urged by the insurance company in this appeal, prosecuted on behalf of itself and the other defendants, that plaintiff should not have been permitted to join it as a defendant until judgment had first been obtained against the cab company.

This contention has recently been overruled by this court a number of times. Some of the cases have arisen under city ordinances and some under our state statutes. Temple v. Dugger, 164 Okla. 84, 21 P. (2d) 482; Jacobsen v. Howard, 164 Okla. 88, 23 P. (2d) 185; U. S. F. & G. Co. v. Hubatka, 172 Okla. 117, 44 P. (2d) 66; Graves v. Harrington, 177 Okla. 448, 60 P. (2d) 622; Enders v. Longmire, 179 Okla. 633, 67 P. (2d) 12; Miner v. Fowler, 180 Okla. 45, 67 P. (2d) 799. The insurance company contends that those cases are distinguishable from the present one, by reason of the following portion of the ordinance, which immediately follows that part first quoted above:

"Said policy shall further provide that insolvency or bankruptcy of the insured shall not release the insurance company from any payment due under said policy and if by reason of such insolvency or bankruptcy and execution on a judgment against the insured is returned unsatisfied, the judgment creditor shall have a right of action against the insurance company to recover the amount of said judgment to the same extent that the insured would have had to recover against the company had the insured paid the judgment."

In our opinion the portion quoted just above emphasizes, rather than lessens, the direct liability of the insurer to the injured person. The general purpose of the ordinance, viewed in its entirety, is protection to the public, not to the taxicab company. If that were not the idea, then the insolvency of the cab company would be immaterial.

A similar but stronger contention was made in a recent case before us, and we overruled it. Enders v. Longmire, 179 Okla. 633, 67 P. (2d) 12. In that case it was contended that section 3708, O. S. 1931 (47 Okla. St. Ann., sec. 169), as amended by section 4, chapter 156, S. L. 1933, postpones the right of action of the injured party against the insurance company until after judgment has first been obtained against the motor carrier, the said section ending in this manner:

"* * * and, **after judgment** against the carrier for any such damage, the insured party may maintain an action upon such policy or bond to recover the same and shall be a proper party so to do."

The similarity of the statute and the ordinance is apparent. In the Enders Case the opinion thoroughly reviewed the authorities and reasoning on this question and held that the insurance company could be joined in the original action, and it is unnecessary to further discuss the question here. The accuracy of proposition 3 of the plaintiffs in error depends upon the correctness of this one, and it follows that no further mention need be made of that proposition.

Proposition 2 presents the argument that the evidence showed the driver of the cab to have been on his own personal business and not engaged in any mission of the cab company at the time and place of the accident. He testified to that effect, partly by way of conclusion. But his testimony and other evidence also showed the following state of facts: Most of the cabs oper-

ated by the taxicab company belonged to persons who leased them to the company, and the company pooled the cars and sent them out on calls and for general taxicab service, from the company's main office and exchange, the company and the car owner sharing the profits in a manner not material here. The cars were subject to the orders of the company, and were not necessarily driven by the owners. The driver of the car involved in the collision was not the owner of that car, but did own another car which was being operated by the company. Thus the driver had a certain business relationship or connection with the company. He testified that the car in the collision was in the service of the defendant cab company at the time the collision occurred. Logically, the question would then assert itself as to just how or in what manner it was in the service of the cab company. The answer given, or the attempted explanation, was that he wanted to go on a trip in the city on a personal mission of his own, and that he paid regular cab fare, ten cents, and drove himself.

Passing entirely over the question of possible inherent improbabilities, let us accept the statement as true, and determine the legal outcome thereof. Clearly, the jury was thus authorized to believe that the man was both driver and passenger. He testified that it was in the service of the cab company, and his conclusion to that effect is supported by the statement that the regular cab fare was, paid by him for the trip. The company shared in the distribution of the fare. There is nothing in the record which would have required the jury to believe that the trifling sum of ten cents represented a sum paid for leasing the cab, nor is there any evidence that the company customarily did, or even had the power to, lease to others the cars of individual owners operated by it in its cab service. On the contrary, the reasonable conclusion from all the facts and circumstances was that the ten cents was paid simply as regular cab fare, which fare was received by the company. His status as passenger did not erase the fact that he was also driver, and that while he may have been on his own business, he was also operating the cab as a cab, not as a leased car. At any rate, we may not say that the jury acted arbitrarily in coming to this conclusion, in view of all the facts and circumstances as outlined above.

The trial lasted several days. On the first day a physician testified for plaintiff, concerning her physical condition, and, on cross-examination by defendants' counsel, revealed that he had examined some X-ray pictures of plaintiff. On the second day of the trial it developed that the X-ray pictures which he had examined were not of the plaintiff, but of some other person. The error appears to have been made inadvertently. Defendants' attorney then moved to strike all of the physician's testimony based on said X-ray pictures, and this motion was sustained, the judge very carefully warning the jury to disregard it. The physician then testified as of his own personal examination of the plaintiff, and from X-ray pictures of her which were properly identified. The defendants now complain of the testimony based on the first X-ray pictures mentioned above. Their motion to strike was sustained; they did not object to the testimony at the time it was introduced. There is no showing of misconduct of opposing counsel in introducing it. Furthermore, it is not shown to have prejudiced their defense in the least. There are instances in the trial of cases where the striking of testimony does not cure the error of admitting it, but in our opinion this is not such an instance. Here the testimony was apparently admissible at the time it was produced, and when the mistake was discovered it was striken. There does not appear to have been any motion for mistrial.

The next proposition involves certain claimed irregularities in the form of the verdict returned by the jury. The verdict of which defendants complain is the second verdict which was returned in the case, the first one having been declared irregular and the jury having again been read a certain instruction and the final verdict having been returned in accordance with that instruction. The verdict against the other defendants was for an amount in excess of the insurance company's liability, and, as against the insurance company, for an amount which was the exact limit of its liability. The verdict is easily understood if the entire proceedings had thereon are considered.

The remaining assignment, as it is formally stated in the defendants' brief, complains of alleged excessiveness of the verdict. The answer brief of plaintiff abstracts more than a sufficiency of the evidence on this issue to sustain the verdict and under the rule announced in Tiger et al. v. Coker et al., 180 Okla. 175, 68 P. (2d) 509, the amount of the verdict is clearly justified.

The judgment is affirmed.

OSBORN, C. J., and RILEY, WELCH,

CORN, and HURST, JJ., concur. BAYLESS, V. C. J., and GIBSON and DAVISON, JJ., absent.