Lillian DANIELS, Plaintiff in Error,

v.

L. C. SCOTT, Sr., d/b/a Scottie's Butane and Propane Company, L. C. Scott, Jr., and Hercules Casualty & Insurance Company, Defendants in Error.

No. 37946.

Supreme Court of Oklahoma.

April 7, 1959.

Dissenting Opinion June 9, 1959.

Rehearing Denied June 9, 1959.

Bailey & Whitlock, Norman, Priest & Belisle, Oklahoma City, for plaintiff in error.

Foliart, Hunt & Shepherd, Oklahoma City, Homer Cowan, Norman, for defendants in error.

Duke Duvall & DeVier Pierson, Oklahoma City, amici curiae.

DAVISON, Chief Justice.

This is an action brought by Lillian Daniels against L. C. Scott, Sr., doing business as Scottie's Butane and Propane Company (hereinafter referred to as Scott, Sr.) and L. C. Scott, Jr. (hereinafter referred to as Scott, Jr.) and Hercules Casualty and Insurance Company, a corporation (hereinafter referred to as Hercules Company) to recover damages for personal injuries received by her as a result of an explosion of propane gas.

The defendant, Scott, Sr., is registered with and has a permit from the State Liquefied Petroleum Gas Administrator for the distribution and sale of propane gas, and the defendant, Hercules Company, is his insurance carrier, and defendant, Scott, Jr., is alleged to be the agent and servant of Scott, Sr.

In her petition plaintiff alleged that in 1951 Scott, Sr., installed a propane tank at the home of plaintiff's mother-in-law and serviced and filled the tank thereafter; that on September 8, 1956, the mother-in-law requested Scott, Sr., to replenish the supply of propane in the tank; that Scott, Jr., made the delivery late in the evening of that day. The petition contains several allegations of negligence in the installation of the tank and the manner in which it was filled and particularly that it was filled too full; that the plaintiff was present at the home of her mother-in-law the next day and that at about 12:30 p. m. of said date the outside temperature had increased causing the liquid gas to expand and spray from the tank and upon plaintiff and the house; that the gas ignited and exploded, seriously injuring and burning the plaintiff.

As to the defendant, Hercules Company, it is alleged that said defendant in accordance with the provisions of Section 420.4, Title 52 Oklahoma Statutes (1955 Session Laws) issued and filed with the said State Liquefied Petroleum Gas administrator a certificate of insurance covering the operations of Scott, Sr.; that the filing of the certificate of insurance was a required condition precedent to the issuance of a Registration Permit to Scott, Sr., and made Hercules Company jointly liable with Scott, Sr. Copies of the Certificate of Insurance and of the Liability Policy were attached to the petition.

All defendants filed general demurrers and motions to strike from the petition all allegations and reference to Hercules Company and liability insurance. The lower court sustained the motions to strike and held that Hercules Company could not be joined as a defendant. The lower court found in effect that in view of the ruling on the motions to strike that the demurrers were moot but did sustain the demurrer of Hercules Company. Plaintiff appeals from the above ruling and urges that joinder of Hercules Company was proper under the provisions of Section 420.4, Title 52 O.S. (1955 Session Laws) Liquefied Petroleum Gas Act, when construed in the light of decisions of this court construing Title 47 O.S.1951 § 169 of the Motor Carrier Act and construing city ordinances requiring

public liability and property damage insurance coverage as a condition precedent to the issuance of a permit to operate a taxicab.

It is our opinion that plaintiff's contention is correct and that Hercules Company was properly joined as a defendant and that the lower court erred in sustaining the motions of defendants striking the name of Hercules Company and allegations of insurance from the petition.

Pertinent portions of Section 420.4, Title 52 O.S. (1955 Laws) are as follows:

"(g) Except as herein otherwise provided, all transporters, distributors or retailers of LPG in this State required to be registered under this Act, shall file with the Administrator a certificate, or certificates, showing that Public Liability and Property Damage Insurance coverage, with limits of not less than $10,000—$20,000 for bodily injury and limits of not less than $10,-000 for property damage, has been issued, and is in full force and effect, covering the plant, equipment and motor vehicles used in such business, and the operations thereof.

"(h) Insurance under this Section shall be kept and remain in force during the lifetime of the operation of the business covered. Except as herein otherwise provided, no registration permit shall be issued hereunder until said certificate, or certificates, showing that the required insurance coverage is in force, is filed with the Administrator, nor shall such insurance coverage be cancelled or terminated unless written notice of such cancellation or termination is given to the Administrator. Nothing herein contained shall be deemed or construed to require Products Liability Insurance coverage.

"(i) Notwithstanding any other provisions hereof, the Administrator is hereby empowered and authorized, upon proof of or a satisfactory showing that any person, firm or corporation is financially able to pay or satisfy any judgment, claim or demand against such person, firm or corporation to which the aforesaid insurance applies, to waive the above insurance coverage requirements; provided, however, that the Administrator may, in his discretion, in lieu of said certificate, or certificates, require the deposit with the Administrator of securities, or satisfactory indemnity bond, in an amount and of a kind designated by the Administrator, to secure the liability of such person, firm or corporation to pay any such judgment, claim or demand, but not in excess of the limits hereinabove set forth; * * *"

The Certificate of Insurance furnished by Hercules Company to the Administrator recites in part:

"The policy to which this endorsement is attached is a bodily injury liability and property damage liability policy, and is hereby amended to assure compliance by the insured with the applicable statutes of the State of Oklahoma and the pertinent rules and regulations of the State Liquefied Petroleum Gas Administrator as respects public liability and property damage insurance required of the insured under the applicable statutes of Oklahoma, covering the plant, equipment, and operations of the assured * * *."

The insurance policy furnished by Hercules Company meets the required minimum amounts of liability coverage set forth in the law. In view of our holding herein and prior decisions of this court there is no need to set forth the other provisions of the Certificate of Insurance or the terms of the insurance policy.

This court has never passed upon the question of whether the cited portions of the Liquefied Petroleum Gas Act authorize or permit joinder of the insurance carrier as a defendant with the registered liquefied gas distributor or retailer in an action for damages for personal injuries arising from the alleged negligence of such distributor or retailer in the operation of his business.

To answer this question requires resort to decisions of this court and other courts construing statutes and ordinances containing similar provisions requiring the furnishing of public liability and property damage insurance as a condition of engaging in some regulated business operation.

This court has held in a number of cases that the insurance company furnishing liability insurance coverage to a motor carrier in compliance with the requirements of Title 47 O.S.1951 § 169, was properly joined as a party defendant with the motor carrier in an action for damages for personal injury arising from the negligence of the motor carrier. It is recognized that the language in this respect is more explicit in the Motor Carrier Act than in the Liquefied Petroleum Gas Act.

In the Motor Carrier case of Temple v. Dugger, 164 Okl. 84, 21 P.2d 482, 486, we said:

"Therefore, under the language of the statute, inasmuch as the insurance was required as a condition precedent to the defendants' right to operate a motorbus, and also in view of the fact that the purpose of the policy was to adequately 'protect the interest of the public' and 'to bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the operation of such motor carrier,' the joinder of the insurance company and bus company was proper."

See also Jacobsen v. Howard, 164 Okl. 88, 23 P.2d 185, 187.

"When a motor carrier files with the Corporation Commission a liability insurance bond as a prerequisite to the issuance to it of a certificate of convenience and necessity, and thereby procures the issuance of such a certificate by the Corporation Commission, neither it nor its liability insurance bondsmen may successfully contend that its bond limits the liability imposed by the statute except as to amount. When it files its liability insurance bond with the Corporation Commission, the provisions of the statute are read into and become a part of that bond."

"* * * Under the statute the liability insurance bond maker is liable for the injuries resulting from the operation of the motor carrier, not by reason of its bond, but by reason of the statute, after it has filed its bond."

The holdings in these cases were reaffirmed in subsequent decisions of this court, including Wray v. Garrett, 185 Okl. 138, 90 P.2d 1050, wherein we stated the motor carrier and liability insurance bondsman were jointly liable and a joint action may be maintained against them; and Enders v. Longmire, 179 Okl. 633, 67 P.2d 12, that the motor carrier and his bondsmen by filing such bond are estopped from asserting any defense alleged to be allowable under the bond in contravention to the liability created by the statute; and see also All American Bus Lines v. Saxon, 197 Okl. 395, 172 P.2d 424 and Jones v. Eppler, Okl., 266 P.2d 451, 48 A.L.R.2d 333, reaffirming decisions of this court permitting joinder in this fact situation.

In Graves v. Harrington, 177 Okl. 448, 60 P.2d 622, there was first presented to us for decision the question of joining, as defendants in a personal injury action, the operator of a taxicab and the insurance company furnishing his liability insurance policy under a city ordinance regulating the operation of taxicabs. The city ordinance required the filing of an insurance policy conditioned the applicant would pay for damages to person and property caused by his negligence. It was conceded the joinder was permissible under the rule of law announced in Temple v. Dugger, supra, but the correctness of the decisions in the Dugger case and in Jacobsen v. Howard, supra, was questioned. We rejected these contentions and reaffirmed our decisions in the Dugger and Jacobsen cases and found that the rule of law therein announced, when applied to the provisions of the city ordinance, permitted joinder of the taxicab operator and his insurance carrier.

In Safeway Cab Co. v. McConnell, 181 Okl. 612, 75 P.2d 884, 885, joinder of the cab company and its insurance carrier was approved. The city ordinance in question required, as a condition precedent to issuance of a license to operate a taxicab, the filing of an insurance policy with the city clerk,

"* * * 'providing insurance coverage for each and every taxicab owned, operated or leased by the applicant with a maximum liability of $5000 for the injury or death of any one person * * * in any one accident, regardless of whether the taxicab was being driven by the owner, his servant, agent or lessee.'"

The similarity of this quoted portion of the ordinance to the language of the Liquefied Petroleum Gas Act is obvious. The ordinance contained additional provisions as to the required content of the insurance policy which the insurance company urged distinguished the case from prior decisions and made joinder improper. These additional provisions are not present in the case now before us for decision. Citing Temple v. Dugger, Jacobsen v. Howard, Enders v. Longmire, supra, and other cases, we held joinder of the cab company and its insurance carrier proper and said:

"* * *. The general purpose of the ordinance, viewed in its entirety, is protection to the public, not to the taxicab company. * * *"

The decisions in Safeway Cab Co. v. McConnell and Graves v. Harrington, supra, were approved in Subscribers at Casualty Reciprocal Exchange v. Sims, Okl., 293 P.2d 578.

The propriety of the joinder of the insurer and insured under a policy of compulsory insurance in an action by an injured third person has been subject of numerous decisions and an extensive annotation thereon appears in 20 A.L.R. at page 1097.

Hercules also contends that the provision of its policy wherein it is stated:

"* * * Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability."

precludes its joinder as a defendant. We do not agree. In Jacobsen v. Howard, supra, we held that the liability insurance bond could not limit liability imposed by law. In Enders v. Longmire, supra, it was urged a "no action" clause in the bond prevented joinder and we held this contention was foreclosed by our decision in the Jacobsen case.

The Hercules Company further urges that the Liquefied Petroleum Gas Act does not make the furnishing of liability insurance compulsory, in that the administrator could in his discretion, upon proof of the financial responsibility of the applicant, waive the insurance coverage requirements or may, in his discretion, in lieu of the certificate of insurance, require the applicant to deposit securities or an indemnity bond, and cites in support thereof Beverly v. Elam, 196 Okl. 15, 162 P.2d 180. In the cited case we held that a class "C" motor carrier was not required to file an application for nor make a showing of convenience and necessity or procure a certificate thereof and file a public liability bond as required by class "A" and "B" carriers, and that the voluntary act of a class "C" carrier and its insurer in filing such bond did not render them jointly liable in a negligence action against the insured. To the same effect is our decision in Subscribers at Casualty Reciprocal Exchange v. Sims, supra, wherein a taxicabe operator and his insurance carrier were held not to be jointly liable in an action for negligence where the insurance policy was filed with the city clerk pursuant to the requirements of a void city ordinance, since the joint liability arose only by operation of law and not by reason of the insurance policy itself.

We do not agree that the Certificate of Insurance and insurance policy was voluntarily furnished by Scott, Sr., in the case now before us.

Under the Liquefied Petroleum Gas Act, it was compulsory as a condition precedent

to the issuance of a registration permit to Scott, Sr., that he file a Certificate of Insurance with the administrator, showing he had the required insurance coverage, or that he submit proof of financial responsibility satisfactory to the administrator or deposit securities or an indemnity bond satisfactory to the administrator, to pay any judgment, claim or demand to which the aforesaid insurance applied. Scott, Sr., elected to procure his registration permit by following the compulsory route of filing the Certificate of Insurance. The difference between the fact situation in the Elam and Sims cases and in the case now before us for decision is apparent.

The Hercules Company also filed a general demurrer to the petition of plaintiff. The lower court after sustaining the motions of the defendants to strike Hercules Company as a defendant and all reference in the petition to insurance then found as to the demurrer, that the same "if not moot, is sustained" and granted time to plaintiff to amend her petition. The plaintiff then perfected this appeal without amending her petition in any respect. The plaintiff did not elect to stand on her petition and the court did not take the customary act of dismissing the petition. Hercules Company has devoted a portion of its brief to the proposition that the petition did not state a cause of action against it and urges the alleged negligent acts of Scott, Sr., and Scott, Jr., fall within the division of the policy described as "Products—Completed Operations," but that insurance covering such division was not purchased. Hercules Company points out the law does not require such insurance coverage, inasmuch as it states, "Products Liability Insurance" is not required, and that these two terms are synonymous. In view however of our decision reversing the action of the lower court sustaining the motions to strike, which was a final order, and the uncertainty of the record relative to sustaining the demurrer, this court expresses no opinion in this respect, to the end that the lower court may take appropriate action with reference

thereto or that plaintiff may amend her petition if she so desires.

The order of the lower court striking Hercules Company as a party defendant and all reference to insurance from the petition is reversed and the cause is remanded for further proceedings in accordance with the views expressed herein.

HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

WILLIAMS, V. C. J., dissents.

WILLIAMS, Vice Chief Justice (dissenting).

I respectfully dissent to the majority opinion inter alia for the reason that I believe the orders appealed from are not appealable orders.

The plaintiff's cause of action is based on the alleged negligence of the defendant Scott, Sr., and his agent. Plaintiff attempted to join in this action as a party defendant, the insurance carrier of the primary defendant Scott, Sr. Defendant Hercules Casualty and Insurance Company filed a motion to strike all parts of such petition referring to insurance requirements of the L.P.G.Act (52 O.S.1951, Supp.1955, § 420.4, subparagraphs (g and i) and all reference to defendant Scott, Sr.'s insurance policy with defendant Hercules Casualty and Insurance Company, and a demurrer. Defendants Scott filed a similar motion and demurrer. Trial court sustained these motions to strike and Hercules' Company's demurrer. Plaintiff appeals from the orders sustaining such motions to strike and demurrer. Such orders are not appealable or final orders under the provisions of 12 O.S.1951 §§ 952 and 953.

12 O.S.1957 Supp. § 952 provides:

"The Supreme Court may reverse, vacate or modify judgments of the district, superior, common pleas, family, juvenile, or county court, for errors appearing on the record, and in the reversal of such judgment or order may reverse, vacate or modify any interme-

diate order involving the merits of the action, or any portion thereof. The Supreme Court may also reverse, vacate or modify any of the following orders of the county, superior, district, common pleas, family or juvenile court, or a judge thereof:

"First. A final order;

"Second. An order that grants or refuses a continuance; discharges, vacates or modifies or refuses to vacate or modify a provisional remedy; or grants, refuses, vacates, modifies or refuses to vacate or modify an injunction; grants or refuses a new trial; or confirms or refuses to confirm, the report of a referee;

"Third. An order that involves the merits of an action, or some part thereof."

It is to be noted from the above that by Session Laws 1955, p. 135, § 1, under "Second" the words "or sustains or overrules a demurrer" were deleted. Formerly appeals have been permitted from rulings on demurrers (and motions for judgment on the pleadings) though no judgment on the issues was rendered. See Board of County Com'rs of Lincoln County v. Robertson, 35 Okl. 616, 130 P. 947. See note 41 to 12 O.S.A. § 952 citing Case v. Ingle, 2 Ind. T. 309, 51 S.W. 958.

In the case of Oklahoma City-Ada-Atoka Ry. Co. v. Parks, 182 Okl. 598, 78 P.2d 791, 792, in reversing Board of County Com'rs of Lincoln County v. Robertson, supra, we said:

"It is to be noted that the court in the Robertson case, supra, cited as authority for the holding therein the case of Ashley Silk Co. v. Oklahoma Fire Ins. Co., 1912, 33 Okl. 348, 125 P. 449, which case held that an order sustaining a demurrer was appealable prior to entry of final judgment. From an examination of the cases above cited, it can be seen that a different rule has been enunciated and followed where an appeal is taken from an order overruling a demurrer prior to entry of a final order or judgment in the cause. Such an order is interlocutory and leaves the case pending to be tried on the merits, and does not come within one of the special orders from which an appeal is authorized by statute prior to the entry of final judgment in the cause as in receivership orders (section 780, O.S.1931, as amended by Laws 1935, c. 3, § 1, 12 Okl.St.Ann. § 1558), and orders in cases involving attachments and temporary injunctions (section 555, O.S.1931, 12 Okl.St.Ann. § 983). See Smith v. Fourth National Bank, 1937, 181 Okl. 280, 73 P.2d 414. Only those orders referred to in section 528, O.S.1931, 12 Okl.St.Ann. § 952, that are final are appealable. Those that are not final are not appealable, but may be reversed, vacated, or modified when properly presented on appeal from a final order or judgment in the cause.

"We therefore hold that no appeal lies to this court from an order overruling a motion for judgment on the pleadings. 3 C.J. 487; 2 Am.Jur. 897. The case of Board of Commissioners of Lincoln County v. Robertson, supra, in so far as it holds to the contrary is hereby overruled."

Under note 42 to said section of O.S.A. are listed a number of cases for the proposition that an appeal may be taken from an order sustaining a demurrer to petition prior to entry of final judgment against the pleader. Cited in connection therewith are Nation v. Chism, 154 Okl. 50, 6 P.2d 766; Smith v. Kennedy, 46 Okl. 493, 149 P. 197 and the Ashley Silk Co. v. Oklahoma Fire Ins. Co. referred to in the last preceding quotation and Adkins v. Arnold, 32 Okl. 167, 121 P. 186, 187, affirmed 235 U.S. 417, 35 S.Ct. 118, 59 L.Ed. 294; Case v. Ingle, supra. In Adkins v. Arnold, supra, the court said:

"* * * when the demurrer (to defendant's answer) was sustained and defendant elected to stand on her pleading, and refused to plead further, she was before the court in default, and

the plaintiff was entitled, on motion, to judgment".

In Smith v. Kennedy, supra, the court said,

"An appeal may be taken from an order sustaining a demurrer to a petition prior to the entry of final judgment against the pleader." [46 Okl. 493, 149 P. 198.]

The court relied upon Ashley Silk Co. v. Oklahoma Fire Ins. Co. in so holding.

In Nation v. Chism, supra, a suit to enjoin enforcement of the "Barber's Bill", the court said, (6 P.2d at page 769):

"* * * Under the provisions of section 780, C.O.S.1921 [12 O.S.1951 § 952], the Supreme Court may reverse, vacate, or modify an order sustaining a demurrer to a petition. 'Any of the following orders' therein refers to any of the three subdivisions thereinafter stated. The first subdivision refers to a final order; the second subdivision refers, among other things, to an order overruling a demurrer. An appeal may be had from either. It is not necessary that there be a dismissal of the action before an appeal to the Supreme Court may be taken from an order sustaining a demurrer to a petition, where the pleader elects to stand on the petition, and on appeal it is not necessary to allege error in dismissing the action where the action of the trial court in sustaining the demurrer to the petition is alleged to be erroneous."

In territorial days the courts took a different view of the matter. In Case v. Ingle, supra, the Court of Appeals of Indian Terr. said,

"In this case we are confronted by the preliminary inquiry, upon the motion of the appellee to dismiss the appeal, as to whether or not the judgment appealed from is a final judgment. In order that a judgment should be final it should settle all the issues involved as to all of the parties. In the case of Horner v. State, 27 Ark. 113, the court, in passing upon the same question, among other things, said: 'It has been so often decided and fully settled in this court that an appeal will lie only from a final order or judgment, that argument or reference to this is unnecessary; and to produce an argument to show that an order overruling a demurrer to the bill is not a final judgment in the cause would not be expected. The chancellor should have proceeded to render a decree upon the whole case before him.' So, in the case at bar, when the demurrer of the plaintiff to the answer of the defendant R. Y. Mangum had been sustained, and he refused to answer further or to amend, the trial court should have proceeded to enter up a judgment against him for the amount of the note sued for and costs. If we should not determine whether or not the amended answer of Case and Walker stated facts sufficient to constitute a defense to the note and mortgage sued upon, the cause would even then have to go back to the trial court to be disposed of as to the other defendant and appellant, R. Y. Mangum, and this probably would necessitate a trial of this cause twice in this court. 'The rule restricting appeals to cases where a final judgment has been rendered is necessary to prevent the division of a case into parts, and to prevent a multiplicity of actions. The rule is in direct harmony with the principle * * * that cases must be decided as an entirety, and by one tribunal'". [2 Ind.T. 309, 51 S.W. 659.]

The law appears to me to be succinctly stated in the syllabus of that case, as follows, to wit:

"1. As an appeal lies only from a final judgment, no appeal can be taken from an order sustaining a demurrer.

"2. On sustaining a demurrer to separate answers of defendants, judgment was entered as to only a part of them on their refusal to plead further. Held, that the judgment was not final, and appealable."

This court, perhaps thinking the latter view the better or possibly by inadvertence, in the case of Terrell v. Phipps, 181 Okl. 409, 73 P.2d 1150, 1151, said:

"The law in this state is that where a demurrer has been sustained to a pleading with the effect of determining the issue between the parties, the party against whom the demurrer is sustained may elect to stand upon the pleading and, when judgment is rendered against him thereon, may appeal directly to the Supreme Court, Berry v. Barton, 12 Okl. 221, 71 P. 1074, 66 L.R.A. 513 * * *"

The rule appears to be that an appeal does not lie in case of the sustaining of a demurrer to a portion only of a pleading. In Hutchison v. Wilson, 136 Okl. 67, 276 P. 198, 199, several plaintiffs sued several defendants to quiet title to real estate. Defendant Hutchison filed an answer and cross-petition. The trial court sustained a demurrer to portions thereof but overruled it as to other portions. Hutchison appealed. The court said,

"From the record before us it appears that the case is still pending in the trial court for final determination upon the plaintiff's petition and defendant Hutchison's first section of his defense * * *"

In the syllabus, we said:

"An appeal does not lie to the Supreme Court from an order sustaining a demurrer to portions of the defendant's answer and cross-petition which leaves the cause pending in the trial court for final disposition upon plaintiff's petition and a defense interposed by defendant controverting the merits of plaintiff's action as to which defense the demurrer was overruled."

This syllabus was quoted with approval in Waldock v. State ex rel. Finney, 146 Okl. 257, 293 P. 1023, 1024. In that case plaintiff in the trial court moved to strike parts of defendant's answer. From an order sustaining that motion defendant appealed. This court said:

"If we consider the motion of the plaintiff to strike as a demurrer to the parts of the answer, as announced in Adams v. Webb, 104 Okl. 180, 230 P. 878, then we have a demurrer sustained to a part of the answer, leaving the remainder of the answer which presents issues as to the allegations of the petition. That brings the facts squarely within the rule announced in Hutchison v. Wilson * * *"

Waldock v. State, supra, was followed in Fowler v. City of Seminole, 196 Okl. 167, 163 P.2d 526. This court in Wesley v. Diamond, 26 Okl. 170, 109 P. 524, had said,

"Under section 6067, Comp.Laws Okl.1909 [12 O.S.1951 § 952], an order that involves the merits of an action or some part thereof may be reversed, vacated, or modified by the Supreme Court before final judgment is rendered in the cause in the trial court."

In Fowler v. City of Seminole, supra, it is stated that Wesley v. Diamond, supra, "was specifically overruled in Attaway v. Watkins, 171 Okl. 102, 41 P.2d 914." [196 Okl. 167, 163 P.2d 527.]

The case of Houston v. Brown, 5 Ind.T. 361, 82 S.W. 775, was one in which materialmen sued the contractors for money due and sought in equity the impression of a lien upon the landowners. The trial court sustained the demurrer of landowners, husband and wife, and materialmen appealed. Appeal was dismissed. The Court of Appeals cited numerous authorities from various jurisdictions and held,

"An order sustaining a separate demurrer of two defendants, no disposition of the case being made as to another defendant, is not a final order, and hence is not appealable."

In Hoffman & Billings Mfg. Co. v. Haxton Steam Heater Co., 18 Ill.App. 484, 485, cited in Houston v. Brown, supra, the court said,

"The order was not final. Such a case cannot be pending partly in this court and partly in the court of orig-

inal jurisdiction at the same time. Nor can appellate courts be required to decide cases piecemeal."

Turning from the matter of the demurrer to the motions to strike, in Fowler v. City of Seminole, supra, it was said that in Waldock v. State, supra, "the court considered a motion to strike as a demurrer to the answer and cross-petition of defendants, which demurrer was sustained in part. Therein the court stated: 'An appeal does not lie to the Supreme Court from an order sustaining a demurrer to portions of the defendant's answer * * * which leaves the cause pending in the trial court for final disposition upon plaintiff's petition and a defense interposed by defendant controverting the merits of plaintiff's action as to which defense the demurrer was overruled' ". [196 Okl. 167, 163 P.2d 526.]

In Adams v. Webb, supra, the court said,

"The action on motion to strike is at most an error reviewable on appeal after final judgment on the merits." [104 Okl. 180, 230 P. 878.]

And further,

"After the action of the trial court in sustaining the motion to strike, the case stood as it did before the supplemental petition was filed. The case was, not disposed of, but defendant should have been required to plead to the original petition either by demurrer or answer, so that issues of law or of fact could be joined and determined."

In Oklahoma City Land & Development Co. v. Patterson, 73 Okl. 234, 175 P. 934, the court said:

"An appeal does not lie to this court from an intermediate or interlocutory order made during the pendency of an action, which intermediate or interlocutory order leaves the parties in court to have the issues tried on the merits, unless the appeal sought to be taken comes within some one of the special orders from which an appeal is authorized by statute prior to final judgment in the main action.

"A 'final order' is one ending the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to determine the rights of the parties."

In that case the court followed Oklahoma City Land & Development Co. v. Patterson, supra, and after quoting both paragraphs of the syllabus thereof, quoted next hereinabove, quoted further therefrom as follows (41 P.2d at page 915):

" * * * If such orders as were entered in this case were appealable to this court for review before final judgment, there would never be any end of litigation. It would furnish a method and means by which litigation could be carried on ad infinitum. Public policy requires that there should be an end to litigation at some time, and for that reason our statute has wisely provided a salutary rule which does not permit an appeal to this court from an interlocutory order or ruling made by the trial court during the trial of a cause unless specially authorized. All the rulings complained of in this matter could have been excepted to, and, when a final disposition was made of said cause, and a final order, judgment, and decree entered therein, determining the respective rights of the parties to this controversy, have been reviewed by incorporating the same in an appeal by petition in error to this court. McMaster v. [People's] Bank, 13 Okl. 326, 73 P. 946; McCulloch v. Dodge, 8 Kan. 476; Flint v. Noyes, 27 Kan. 351; Short v. Nooner, 16 Kan. 220."

The Attaway v. Watkins opinion afterward refers to Wells v. Shriver, 81 Okl. 108, 197 P. 460, 480, which is an exhaustive opinion dealing with these matters and quotes therefrom as follows:

" * * * We believe the case of Oklahoma City Land & Development Co. v. Patterson, supra, comes nearer following the intent of legislative acts

than any other. Wells v. Shriver, supra, suggests the proper method of appeal from an order other than the one which finally disposes of the case, and that is to save exception to the ruling and appeal and have the error complained of reviewed upon proper record after final disposition of the cause."

In Grunawalt v. Grunawalt, 24 Okl. 756, 104 P. 905, 906, the court said:

"Where a motion made by defendant to strike certain portions of plaintiff's petition is sustained, and no further action is taken by the court, the same is not a final or appealable order, sufficient to vest jurisdiction in the Supreme Court to entertain an appeal from such action."

To the same effect as applied to a motion striking portions only of an interplea, see Sherman v. Sherman, 204 Okl. 283, 229 P.2d 177.

In Emerson v. Lewis, Okl., 274 P.2d 529, 531, we·said:

"A judgment is defined as the final determination of the rights of the parties in an action. 12 O.S.1951, § 681."

And further:

"An order which neither grants nor denies the relief sought and which does not dispose of all the issues in the case or some one or more of the causes of action thereof cannot be construed to rise to the dignity of a judgment."

In my opinion since the part of the statute authorizing this court to reverse, vacate or modify an order sustaining or overruling a demurrer has been repealed and since the order of the trial court sustaining motions to strike were mere interlocutory orders and could amount to no more than orders sustaining demurrers, this appeal undoubtedly should be dismissed.

Plaintiff's rights against Hercules, if any ever accrue, are not prejudiced nor finally determined by such orders. There is a substantial advantage to plaintiff in being permitted to join the insurance company. However, that is not a substantial right as contemplated by the statute.

Further, the majority opinion does not consider the fact that the administrator of the L.P.G. Act has placed a practical construction or interpretation on the quoted provisions of the L.P.G. Act, 52 O.S.1951, Supp.1955, § 420, subparagraphs (g) and (i). The Certificate of Insurance, prepared by and used by the L.P.G. Administrator, is as follows:

"* * * In consideration of the premium stated in the policy to which this endorsement is attached, *the company hereby agrees to pay any final judgments recovered against the insured* for bodily injury to or the death of any person or loss of or damage to property of others (excluding injury to or death of the insured's employees while engaged in the course of their employment, and the loss of or damage to property of the insured and property transported by the insured) resulting from * * *." (Emphasis added.)

This practical interpretation of an ambiguous or uncertain statute by the executive department charged with its administration is entitled to highest respect by the court. In De Hasque v. Atchison, T. & S. F. Ry. Co., 68 Okl. 183, 173 P. 73, 74, L.R.A.1918F, 259, we said:

"Construction placed on the laws by officers charged with the enforcement thereof in the discharge of their duties, at or near the time of their enactment, which has long been acquiesced in, is a just medium for their judicial interpretation."

The wording of this certificate of insurance conclusively shows that the administrator has never interpreted the L.P.G. Act to make the insurance carrier primarily liable to persons injured through acts of insured, thus joinable in the same action.

I further dissent to the majority opinion for the reason that I believe that it is an unwarranted extension of the meaning of the statute.

The majority opinion relies upon a line of cases based on Temple v. Dugger, 164 Okl. 84, 21 P.2d 482, and Jacobsen v. Howard, 164 Okl. 88, 23 P.2d 185. In these cases this court held that the insurer could be joined in an action against an insured motor carrier under the following provisions of the 1923 Act Sections 3692 to 3699, O.S.1931, concerning motor carriers:

"* * * such motor carrier shall have filed * * * a liability insurance bond * * * in such a penal sum * * * to adequately protect the interest of the public, with due regard to the number of persons and amount of property involved, which liability insurance shall bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the operation of such motor carrier." Section 3697.

The cause of action in Temple v. Dugger, supra, arose under this statute. In 1929, the 1923 Act was amended to read (sections 3700 to 3713 O.S.1931, 47 O.S.A. §§ 161–174) as follows:

"* * * such motor carrier shall have filed * * * a liability insurance policy or bond covering public liability and property damage, * * * and shall be in such sum and amount as fixed by a proper order of the Corporation Commission. Said liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property resulting from the operation of any such motor carrier for which such carrier is legally liable * * * A copy of such policy or bond shall be filed with the Corporation Commission, and after judgment against the carrier for any such damage, the injured party may main-

tain an action upon such policy or bond, to recover the same and shall be a proper party so to do." Section 3708.

In 1933 the 1929 Act was amended by Section 4, chapter 156, Oklahoma Session Laws 1933, 47 O.S.A. § 169, which specifically repealed the 1923 Act. The 1933 provision is as follows:

"* * * and such liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any such motor carrier for which such carrier is legally liable * * * A copy of such policy or bond shall be filed with said Commission, and, after judgment against the carrier for any such damage, the injured party may maintain an action upon such policy or bond to recover the same, and shall be a proper party so to do."

In Enders v. Longmire, 179 Okl. 633, 67 P.2d 12, 15, this court, in construing the phrase "and after judgment against the carrier for any such damage, the injured party may maintain an action upon such policy or bond to recover the same and shall be a proper party so to do", said, "Had the Legislature intended that a judgment against the carrier must exist before suing the insurance or bonding company, it would have been very simple for the Legislature to have provided in the 1929 or 1933 amendment, as follows: 'Only if, and after, judgment is secured * * *'"

In the above cases this court said:

"Therefore, under the language of the statute, inasmuch as the insurance was required as a condition precedent to the defendants' right to operate a motorbus, and also in view of the fact that the purpose of the policy was to adequately 'protect the interest of the public' and 'to bind the obligors thereunder to make compensation for injuries to persons and loss of or dam-

age to property resulting from the operation of such motor carrier,' the joinder of the insurance company and bus company was proper." [164 Okl. 84, 21 P.2d 486.]

"Under the statute the liability insurance bond maker is liable for the injuries resulting from the operation of the motor carrier, not by reason of its bond, but *by reason of the statute*, after it has filed its bond." [179 Okl. 633, 67 P.2d 14.] (Emphasis added).

In Graves v. Harrington, 177 Okl. 448, 60 P.2d 622, and Safeway Cab Co. v. McConnell, 181 Okl. 612, 75 P.2d 884, the doctrine of Temple v. Dugger, supra, and Jacobsen v. Howard, supra, was extended to taxicab companies operating under city ordinances requiring such insurance as a precedent to doing business, in which we said:

"* * * The general purpose of the ordinance, viewed in its entirety, is protection to the public, not to the taxicab company * * *" [181 Okl. 612, 75 P.2d 885.]

The Liquified Petroleum Gas Act under which the present cause of action arose, was amended in 1955, Section 420.4, Title 52 O.S.1955 Supp.Laws, to provide as follows:

"* * * (g) Except as herein otherwise provided, all transporters, distributers or retailers of LPG * * * shall file * * * a certificate, or certificates, showing that Public Liability and Property Damage Insurance coverage * * * has been issued and in full force and effect, * * *

"* * * Except as herein otherwise provided, no registration permit shall be issued hereunder until said certificate, or certificates, showing that

the required insurance coverage is in force, is filed with the Administrator * * *

"Notwithstanding any other provision hereof, the Administrator is hereby empowered and authorized, upon proof of or a satisfactory showing that any person, firm or corporation is financially able to pay or satisfy any judgment, claim or demand against such person, firm or corporation to which the aforesaid insurance applies, to waive the above insurance coverage requirements; * * *"

In 1957 the Act was again amended (Section 2, Chapter 8, p. 451, Title 52, Oklahoma Session Laws 1957, 52 O.S.Supp. § 420.4). In this amendment the requirement as to such insurance was omitted. In view of this and in conjunction with the provisions of 1955 amendment above quoted, it can hardly be said that such insurance was for the protection of the public as such, by permitting insurance company to be joined as party defendant by one injured by the insured, but only for assurance of the financial responsibility of persons or firms engaged in such business.

Thus, for the doctrine of Temple v. Dugger, supra, there were three grounds for the basis of that decision: (1), insurance a pre-requisite to doing business; (2), protection of the public, and (3), statutory liability of insurer.

In the taxicab company cases only two of these grounds existed: (1), insurance a pre-requisite to doing business, and (2), protection of the public.

In the present case only one of these grounds exists: (1), insurance a pre-requisite to doing business.

I do not believe that the doctrine of Temple v. Dugger, supra, should be so extended.

I therefore respectfully dissent.