## BOARD OF COUNTY COM'RS OF LINCOLN COUNTY v. ROBERTSON.

No. 3567.    Opinion Filed March 11, 1913.

(130 Pac. 947.)

1.    APPEAL AND ERROR—Motion for Judgment on Pleadings—Entry of Judgment. A motion for judgment on the pleadings is in effect a general demurrer, and under section 6067, Comp. Laws 1909, an order denying the same is appealable to the Supreme Court although no judgment on the issues is rendered thereon.

2.    DRAINS — District and Prosecuting Attorneys — Commissioners for Drainage District—Employment of Attorney—Authority. A board of county commissioners acting as commissioners for a drainage district has authority to employ attorneys in order to prosecute or defend the formation of such district, and it is not part of the official duty of the county attorney of the county within which such district is located to act as such.

3.    COUNTIES — Drainage District — Claims—Allowance—Review by County Commissioners. The board of county commissioners as such has no authority or jurisdiction to re-audit and disallow a legal claim previously audited and allowed by such board while acting as drainage commissioners in the formation of a drainage district.

(Syllabus by the Court.)

*Error from District Court, Lincoln County;*
*Chas. B. Wilson, Jr., Judge.*

Proceeding by J. B. A. Robertson for the allowance of his account as attorney for a drainage district in Lincoln County. A motion for a judgment on the pleadings by Robertson having

been denied, the Board of County Commissioners brings error, and Robertson alleges cross-errors. Reversed and remanded.

*Dale & Bierer* and *W. L. Johnson,* for plaintiff in error.

*J. B. A. Robertson, pro se.*

DUNN, J. This case presents error from the district court of Lincoln county, and arises out of the employment by the board of county commissioners, acting as commissioners for the Deep Fork drainage district, located in that county, of J. B. A. Robertson, Esq., defendant in error, as its attorney, in the organization and litigation growing out of the creation of that district. The record discloses that on August 12, 1910, defendant in error presented to the said board of county commissioners so acting the following application:

"To the Honorable Board of County Commissioners of Lincoln County, Oklahoma—Gentlemen: I hereby make application to your honorable board to be employed by you as counsel for the legal work to be done and required in the so-called Deep Fork drainage district, said employment to be made by virtue and authority of the drainage law of the state, and paid for as provided by law and the estimate of the viewers filed in the office of the county clerk; the value of said service to be fixed by you in accordance to the amount and value of services performed. Respectfully submitted, J. B. A. Robertson."

Whereupon the said board, taking action thereon, unanimously passed the following resolution:

"Whereas, by virtue of the contemplated public improvement about to be made in Lincoln county, Oklahoma, commonly known as the Deep Fork drainage ditch, and the other supplementary ditches thereto, there is absolute need of legal advise and assistance in addition to the county attorney, the work entailing more labor than one man can do and perform, and this board, the county clerk, the county surveyor and engineer and other interested parties needing the constant advice on the many questions arising by reason of the improvements aforesaid; and whereas, great damage will be done to the interested parties in said drainage district if the work is not properly done and the various interests of the county and the individuals properly protected; and whereas, said service will require the entire time of at least one competent attorney in addition to the county attorney; whereas,

Mr. J. B. A. Robertson has made application to this board to be employed as such attorney and he being a competent attorney and not disqualified in any way: Therefore, be it resolved by the board of county commissioners of Lincoln county, Oklahoma, in session assembled this 13th day of August, 1910, that the proposition of employment made by said J. B. A. Robertson to this board this day be and the same is hereby accepted; and he is hereby employed by the board as assistant to the county attorney for the aforesaid purpose, i. e., to advise this board, the county officers having duties to perform by virtue of said proposed Deep Fork drainage district and to appear in any and all courts and to prepare and file all necessary suits and to answer and defend any and all suits and to prepare all necessary papers and to do and perform fully all the duties pertaining to his said office as attorney in such matter in conjunction with the county attorney or by himself alone as may be necessary to facilitate the said work, and he is hereby authorized to proceed at once to the discharge of his duties as such attorney and his services shall be paid out of the special assessment (as provided by law) in said public improvement and to be in such sum as the amount and character of his said services shall be worth."

Thereafter, and on January 6, 1911, the question of the amount of fees earned and due to the said attorney for the said employment came before the said board of drainage commissioners for action, and the following agreement or account stated was entered into between them:

"In the matter of compensation of attorney for Deep Fork Drainage District No. 1, agreement as to fees due attorney: Whereas, this board by resolution, passed on the 13th day of August, 1910, employed J. B. A. Robertson as attorney for Deep Fork Drainage District No. 1, Lincoln county; and, whereas, said attorney at once entered upon the discharge of his duties as such attorney and has, in a manner satisfactory to the board and the best interests of the said district, discharged all the duties of his said office; and, whereas, the term of all members of the board are about to expire and it is necessary that the compensation of the said attorney be fixed by this board before the end of the official year; and, whereas, it is within the personal knowledge of all the members of this board that said attorney has appeared in the federal court for the Western district of Oklahoma, in three railway injunction cases, and has made appearance in the Circuit Court of Appeals of the United States, at St. Louis, in the three appealed cases by the said railways, and has tried about fifty

cases before this board and several in the district court, including one appealed from this board in the matter of issuance of county warrants, and has prepared copy for the issue of bonds already printed and has proof read the same, and has corresponded with bond buyers and contractors at his own expense, and has at all times since his said employment been constantly employed in and about the proposed improvement and has advised this board since his said employment at all times concerning the said improvement; and, whereas, said improvement required various trips to the capital of the state for consultation with the State Treasurer and the Commissioners of the School Land Office, as well as the Governor and members of the state Legislature relative to the payments of the assessments against the school lands embraced in said district, and said attorney has done and performed the preliminary work looking to the introduction and passage of a bill appropriating the said assessments due in money; and whereas, the said improvement being a gigantic undertaking entailing an estimated cost of over $800,000.00 and practically all the time of the said attorney has been taken up with the said work, the same entailing great worry, effort and energy on his part: It is therefore agreed by the parties hereto that the said J. B. A. Robertson, as such attorney, shall have and receive as and for his full compensation (including retainer fee for the entire work) up to January 1, 1911, the sum of five thousand dollars to be paid out of the assessments levied against the property in said Deep Fork Drainage District No. 1, Lincoln county, Oklahoma, this to be the addition to the sum of seventy-five dollars due the county for office rent from the said J. B. A. Robertson. Witness our hand this 6th day of January, 1911.

"GEORGE F. CLARK, Chairman.
"R. A. MORROW.

"I certify that Judge Robertson did, to the best of by knowledge, perform services claimed, but am not in a position to say what said services are worth.

"JACOB AMBERG.

"I accept the above sum in full settlement up to January 1, 1911.

"J. B. A. ROBERTSON,
"Attorney for Deep Fork Drainage District No. 1."

Subsequently the personnel of the board of county commissioners changed, and, on defendant in error filing his approved account, properly verified, before it for allowance, it was disallowed, and an appeal was prosecuted to the district court. On

coming on for hearing before the said court, defendant in error filed a motion for judgment on the pleadings, which, after consideration by the court, was denied. On the approval of the account by the said drainage board which made the contract, a number of private citizens petitioned the county attorney to take an appeal from its action to the district court, which was attempted to be done, but which appeal in the district court was dismissed, from which action the county attorney appealed to this court, which, however, after its lodgment here, he filed motion to dismiss, thereby disposing of that branch of the case. From the action taken by the court in denying his motion for judgment on the pleadings, defendant in error filed a cross-petition in error, and insists here that the said motion should have been sustained. The cases in the district court were consolidated and are argued and briefed together in this court.

Three propositions are urged against the allowance of the judgment asked for by defendant in error: First, that an appeal does not lie from the order denying the motion for judgment on the pleadings; second, that the board of county commissioners acting as commissioners for the drainage district lacked the authority to make the employment; third, that if possessed of the authority, the amount allowed was excessive.

Considering these objections in the order named, this court, following the Supreme Court of Kansas, has held, in the case of *Cobb v. Wm. Kenefick Co.,* 23 Okla. 440, 100 Pac. 545, that a motion for judgment on the pleadings, although unknown to the Code, is a common and permissible practice and is in effect a demurrer. Section 6067, Comp. Laws 1909, provides that "the Supreme Court may also reverse, vacate or modify any of the following orders of the district court or a judge thereof: First * * * which * * * sustains or overrules a demurrer." And that such order is appealable although no final judgment is rendered thereon, see Burdick, New Trials and Appeals, sec. 163; *United States Express Co. v. State,* 33 Okla. 370, 125 Pac. 448; *Bartholomew v. Guthrie,* 71 Kan. 705, 81 Pac. 491. In the case last cited it is held on this identical section of the Kansas statute that error would lie to the Supreme Court from a decision of the district

court which sustained or overruled a demurrer, even when no judgment on the issues was rendered. Under these circumstances, the motion of plaintiff in error to dismiss the appeal of defendant in error must fall.

The insistence that it was the official duty of the county attorney of the county to serve as the attorney of the board of drainage commissioners arises from a misconception of both the scope of his duties as laid down and provided for by the statute and also from the character and nature of the said board. Under the drainage act and its amendments (chapter 32, Comp. Laws 1909, and chapter 79, Sess. Laws 1910), a drainage district is a separate, independent, and distinct entity from the county itself. It is not brought into existence or created for the purpose of either county, township, or any other species of municipal government. It presents merely a voluntary or involuntary association of a number of people whose lands lie within a certain drainage belt under which certain improvements are made which increase the utility and value of the lands therein, and which is recognized and controlled by the statutes of the state for the reason that it conduces to the general welfare of the people of the county or of the state. The people primarily interested in the project are always those whose lands are benefited or damaged or who receive pay for the damages. The statute fixing the duties of the county attorney relates in no particular whatsoever to such a project as this, and he is neither elected nor paid by the county to devote his time and attention to prosecuting or defending the necessary legal details essential to the proper formation of such district. Moreover, in the present case the agreement entered into with defendant in error and the board of drainage commissioners shows that the services contemplated and required to be performed were not only in the courts held within Lincoln county, but that his duties carried him to the capital of the state, to the federal courts within the state, and the federal Circuit Court of Appeals at St. Louis, all of which employment was manifestly beyond the official duty of the county attorney to perform. Under these circumstances the employment of defendant in error by the board of county commissioners acting as commissioners for the

drainage district was, in our judgment, a valid and legal charge against the said district.

We next come to the proposition that the amount of the fee allowed by the drainage commissioners was in excess of the value of the services, and that the board of county commissioners acting as the commissioners for the county, or the district court on the appeal from the disallowance of the agreed price when presented to the said county commissioners, could revise and had jurisdiction and authority to determine the amount thereof. This contention is likewise, in our judgment, predicated upon a failure to properly understand the nature of the board of drainage commissioners, and grows out of the fact that, under the provisions of the drainage act of Oklahoma, it happens that the auditing board of the county, to wit, the board of county commissioners, is made the commissioners of the drainage district. Acts similar to the one here under construction are contained in a great many of the states, and different bodies are selected as commissioners to organize drainage districts. For instance, in North Dakota, three freeholders are selected by the board of county commissioners to act as the board of drainage commissioners. Rev. Codes of North Dakota 1895, sec. 1445. In Illinois, under different proceedings, the commissioners of highway of each township are drainage commissioners. Rev. St. of Illinois 1909, c. 43, sec. 75. And under section 129, *Id.*, the commissioners are elected by the landowners within the district. In Missouri a board of supervisors are likewise elected. 2 Rev. St. Missouri 1909, sec. 5507. In Indiana the drainage commissioner is appointed by the board of county commissioners. Rev. St. of Indiana 1897, sec. 5844. In Wisconsin, after the organization of the district by the court in which the petition is filed, the court appoints three competent persons to act as commissioners. Wisconsin St. 1911, sec. 1379. In California, the board of supervisors of the county where the district lies appoints three persons to serve as trustees. 5 Gen. Laws of California, p. 370. In Nebraska, after the organization of the district by the court on petition filed, the owners of the real estate therein elect a board of

five supervisors to conduct its affairs. Cobbey's Ann. St. of Nebraska 1911, sec. 5565.

The duties of all of these different boards are virtually the same as the duties of the board of county commissioners acting as such drainage commissioners under the Oklahoma drainage act. They are set forth in section 3045, Comp. Laws 1909, as follows:

"Said commissioners shall have exclusive jurisdiction to hear and determine all contests and objections to the creation of such district and all matters pertaining to the same, and said commissioners shall have exclusive jurisdiction in all subsequent proceedings of the district when organized except as hereinafter provided, and may adjourn hearing on any matter connected therewith from day to day, and all judgments rendered by said commissioners in relation thereto shall be final, except as herein otherwise provided. The term 'commissioner' as used in this act, shall mean the board of county commissioners."

Section 3054, *Id.*, as amended by section 5, c. 79, Sess. Laws 1910, provides for the method of payment of the costs incident to the organization of the district, and reads as follows:

"No assessment shall be made for the benefit to any land upon any other principle than that of such benefits derived, and all the assessments shall be made on the basis of benefits accorded by reason of the construction of the improvement and of giving an outlet for drainage, and the various tracts included in the whole acreage benefited, in proportion to the benefits to each tract accorded. In estimating damages the viewers and commissioners shall take into consideration the land and drains appropriated and the direction of the drain across the land. The estimate for location expenses shall include the amount of costs reported by the viewers, and reasonable provision for properly inspecting and receiving the work, and all fees of officers, as herein provided, including making of record and executing all orders and processes of the commissioners, together with the fees of clerks, engineers and other experts, and the fees for all publications required by this act."

It is the fact that in Oklahoma the board of county commissioners have been made the drainage commissioners which has produced the confusion. If some other body had been selected to perform the duties of the drainage commissioners as in the states above referred to, the agreed or stated account on coming

to the board of county commissioners for allowance would have and should have been without question allowed, and warrant issued therefor. With the amount of the bill presented, the board of county commissioners as such had absolutely no jurisdiction and no authority. Its sole duty was to ascertain whether it has been properly allowed by the drainage commissioners and was properly presented to it, and, when it had done this, the balance of its duty was purely ministerial, and defendant in error would have been entitled to a writ of mandamus compelling its auditing and allowance. The claim presented did not create an indebtedness of the county, but was an indebtedness incurred by the drainage district and was due and owing by it; the county temporarily advancing the necessary funds to enable the parties interested in such district to create the same. Section 3064, Comp. Laws 1909.

This same question appears to have arisen both in Illinois and North Dakota, whose acts are in many particulars similar to the one in this state. The Supreme Court of Illinois, in the case of *Vandalia Drainage District v. Hutchins,* 234 Ill. 31, 84 N. E. 715, disposing of this proposition, said:

"A fair construction of this act requires that in its practical enforcement such incidental expenses as attorneys', engineers', surveyors', and commissioners' fees must be incurred in the necessary preliminary work before the assessment is spread or levied, but must be included in the original estimate and paid out of the original assessment."

The Supreme Court of North Dakota, in the case of *Erickson et al. v. Cass County et al.,* 11 N. D. 494, 92 N. W. 841, said:

"Neither do we find that charges for unauthorized items were included in the cost of the drain, as alleged by appellants. The items objected to are bridges, attorneys' fees, interest, incidental expenses, publishing notices, clerks' fees, office rent, furniture, printing, books, and supplies. It is patent that a work of the magnitude of this ditch might very properly involve expenditures such as are objected to. It was plainly the intention of the Legislature to provide for the allowance and inclusion of all items of expense which would fairly contribute to the establishment, construction, and maintenance of drains—a course which is absolutely necessary under any practical drainage law. Drains cannot be constructed unless funds are provided to pay such expenses

as properly enter into their construction, and no other source exists for obtaining funds than assessments of benefits. Section 1466, Rev. Codes, provides that the cost of the drain shall include all the expense of locating and establishing the same, including the cost of the right of way, the drain commissioners' fees, cost of survey, cost of building bridges and culverts, interest on warrants issued or to be issued, amount of the contracts, and 'all other expenses.' This section is broad enough to include all of the items to which appellants object, and all of which we find contributed to the establishment and construction of the drain, and were therefore legitimate charges to be contracted for and allowed by the board in the exercise of a sound and reasonable discretion. Whether the sums allowed in each instance were correct, we need not inquire. They met the approval of the tribunal created by law to pass upon them. The board acted within its jurisdiction in making the allowances, and there is no claim that they acted fraudulently. That the items were proper expenditures cannot be doubted. See *Butler v. City of Toledo,* 5 Ohio St. 225. It hardly need be said that the authority of drainage boards is not arbitrary or unlimited, and that landowners and others interested are not remediless against usurpations of jurisdiction. They may invoke the same remedies against attempted usurpations of authority as are available as against other inferior boards acting in excess of their jurisdiction."

There is no claim in the case at bar that there was any irregularity or fraud entering into the presentation or allowance of the claim here in question. Under these circumstances, the motion for judgment on the pleadings should have been sustained, and the case is remanded to the district court with authority to proceed as provided for in section 1694, Comp. Laws 1909, to render judgment or to return the claim to the board with an order to proceed, requiring it to allow the claim in accordance with law.

HAYES, C. J., and KANE and TURNER, JJ., concur; WILLIAMS, J., not participating.