OSCN Found Document:JACKSON COUNTY EMERGENCY MEDICAL SERVICE DISTRICT v. KIRKLAND

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 JACKSON COUNTY EMERGENCY MEDICAL SERVICE DISTRICT v. KIRKLAND
2024 OK 4
Case Number: 121510
Decided: 02/13/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 4, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JACKSON COUNTY EMERGENCY MEDICAL SERVICE DISTRICT, and DORA HANDCOCK, Petitioners,
v.
THE HONORABLE KORY S. KIRKLAND, JUDGE OF THE DISTRICT COURT FOR GRADY COUNTY, STATE OF OKLAHOMA, Respondent,

COMPSOURCE MUTUAL INSURANCE COMPANY, Intervenor.

APPLICATION TO ASSUME ORIGINAL JURISDICTION AND PETITION FOR WRIT OF PROHIBITION
Honorable Kory S. Kirkland, Trial Judge
¶0 After an ambulance collided with a turnpike tollbooth, the injured toll-worker filed a lawsuit against the ambulance driver and her employer, the Jackson County Emergency Medical Services District. The medical district sought to dismiss the lawsuit. It argued that it was entitled to governmental immunity, and that the Governmental Tort Claims Act, 51 O.S. 2021 §155(14) applied to prohibit recovery because the toll-worker had recovered workers compensation benefits. The trial court denied the dismissal. The medical district filed an Application to Assume Original Jurisdiction and Petition for Writ of Prohibition in this Court to prevent the trial court from proceeding further. We assume original jurisdiction and grant the writ of prohibition by opinion. We hold that: 1) pursuant to the Okla. Const. art. 10, §9C, although the medical district is a unique entity, it is subject to lawsuits through its board of trustees to the same extent as any Oklahoma municipality or county; and 2) the Governmental Tort Claims Act, 51 O.S. 2021 §§155(14) et seq., is applicable to preclude recovery.
ORIGINAL JURISDICTION ASSUMED;
PETITION FOR WRIT OF PROHIBITION GRANTED.
Graydon D. Luthey, Jr., Steven J. Adams, Tulsa, Oklahoma, for Petitioners.
Michael S. McMillin, Oklahoma City, Oklahoma, for Petitioner, JCEMSD.
Adam W. Christensen, Oklahoma City, Oklahoma, for Intervenor, Compsource Insurance Co.
Kevin E. Hill, Oklahoma City, Oklahoma, for Real Party in Interest, Shannon Garst.

KAUGER, J.:
¶1 The issues presented are whether: 1) the Jackson County Emergency Medical Services District (JCEMSD/medical district) or its Board of Trustees is the proper party to be named and subjected to suit when a lawsuit is brought against the medical district; and 2) if Governmental Tort Claims Act, 51 O.S. 2021 §155(14)[1] applies to this cause to preclude recovery.
¶2 The Okla. Const. art. 10, §9C creates medical districts to be run by a board of trustees, which are subject to the same liability as municipalities or counties.
[2] In this cause, the plaintiff sought a determination from the trial court that medical districts and their board of trustees were two separate entities, subject to differing standards and limits of liability. They would have medical districts treated as ordinary private corporate entities, even if their boards of trustees were governmental entities. We disagree. Pursuant to the Okla. Const. art. 10 §9C, medical districts and their board of trustees are not separate entities. We hold that: 1) although the medical district is a unique entity, it is subject to lawsuits through its board of trustees to the same extent as any Oklahoma municipality or county; and 2) the Oklahoma Governmental Tort Claims Act, 51 O.S. 2021 §§155(14) is applicable to preclude recovery.[3] 
FACTS
¶3 American Staff Corporation employed the real party in interest, Shannon Garst (Garst/tollbooth operator), to work as a tollbooth operator at the Newcastle, Oklahoma, tollboth on I-44 (H.E. Bailey Turnpike). The petitioner, JCEMSD, employed the petitioner, Dora Handcock (Handcock/ambulance driver), to drive an ambulance. On June 12, 2020, Handcock, while transporting a patient from Jackson County Memorial Hospital in Altus, Oklahoma, to a hospital in Oklahoma City, Oklahoma, crashed into the tollbooth at excessive speed, injuring the tollbooth operator.
¶4 On June 19, 2020, the tollbooth operator filed a notice of claim to the Workers' Compensation Commission for cumulative trauma resulting from the accident. Pursuant to the notice requirements of the Oklahoma Governmental Torts Claims Act, 51 O.S. 2021 §156 (GTCA), she also filed a notice of tort claim with the JCEMSD, out of an abundance of caution.[4] The notice is dated April 12, 2021, and it is addressed to the JCEMSD at its administrative office, in care of Board of Trustee member Dorothy Butler.
¶5 On November 22, 2021, Garst filed a lawsuit in the District Court of Grady County against the JCEMSD and the ambulance driver. She sought damages for Handcock's alleged negligent and reckless driving, and against JCEMSD as Handcock's employer. On March 24, 2022, the trial court allowed intervention by CompSource Mutual Insurance Company (CompSource). CompSource sought reimbursement for paying workers compensation benefits to Garst.
[5] 
¶6 On October 19, 2022, the ambulance driver and JCEMSD filed a Motion for Summary Judgment. They argued that the JCEMSD was entitled to immunity pursuant to the GTCA, 51 O.S. 2021 §§155(14),[6] and that the GTCA precluded the ambulance driver from being sued in an individual capacity. On November 30, 2022, Garst responded to the Motion for Summary Judgment, arguing that case law, and Oklahoma Attorney General Opinions, indicate that medical districts such as the JCEMSD, are not governmental entities under Oklahoma law because they are:

1) not a state, county, county hospital, city, town or public or private trust of a city or town; 
2) a hybrid type of entity, and as such, are not entitled to governmental tort immunity; and 
3) not covered by any county insurance policy, and not represented by the county attorney, but instead, have private insurance and a private attorney.
¶7 The trial court held a hearing on the summary judgment motion on January 12, 2023. It denied JCEMSD and Handcock's Motion for Summary Judgment.
[7] The ruling states:
The Court finds that Jackson County Emergency Medical Service District is not an entity that is entitled to Immunity under the Governmental Tort Claims Act 51 O.S. 151, et seq. The Court finds that if the government is going to compete with the private sector and the government is going to engage in the same type of liability in commerce as everyone else in that field and everyone else on the roads, it only stands to reason that they be held to the same standard, absent some specific provision of the law. The Governmental Tort Claims Act does not provide immunity to the defendants and the Governmental Tort Claims Act does not apply to Defendants JCEMSD and Dora Handcock.
¶8 On January 27, 2003, JCEMSD and Handcock filed a Motion to Substitute Parties and to Reconsider the Application of the GTCA. They sought dismissal substitution of the defendant JCEMSD for the Board of Trustees of the JCEMSD. Even though they concede that they the JCEMSD and its Board are one and the same party, regardless of what name they are sued under, they argued that only the Board of Trustees had the capacity to sue and be sued, making the JCEMSD immune from suit under the GTCA. Alternatively, they also reasserted that if the trial court found that the Board did not have to be named, the JCEMSD is provided immunity by the GTCA.
¶9 Garst provides several examples where the JCEMSD, not the Board of Trustees, was used as the name of the organization in several lawsuits and settlements. She argues that it operates under the name JCEMSD for bills and services, and is the properly named party. After an April 13, 2023, hearing, the trial denied the JCEMSD and Handcock's Motion to Substitute and reconsideration of the application of the GTCA.
¶10 On August 9, 2023, the JCEMSD filed an Application to Assume Original Jurisdiction and Petition for Writ of Prohibition in this Court. It argued that:
1) the JCEMSD is an entity of Jackson County, formed under the Oklahoma Constitution, and it cannot be sued; 
2) the JCEMSD Board of Trustees, which has the capacity to be sued, is protected by sovereign immunity;
3) if either the JCEMSD or its Board of Trustees are determined to be amenable to suit, the Governmental Tort Claims Act, 51 O.S. 2021 §155(14) applies and precludes recovery because benefits under the Workers' Compensation Act were previously received by Garst.
¶11 The Medical District sought an order of substitution to have the JCEMSD Board substituted for the Medical District, and a Writ of Prohibition from this Court to prevent any further proceedings in the trial court. We assumed original jurisdiction to address the first impression issues by opinion.
[8] 

I.

PURSUANT TO THE Okla. Const. art. 10 §9C, ALTHOUGH THE MEDICAL DISTRICT IS A UNIQUE ENTITY, IT IS SUBJECT TO LAWSUITS THROUGH ITS BOARD OF TRUSTEES. 
¶12 The JCEMSD argues that, regardless of whether it or its board is the properly named party in a lawsuit, both are cloaked with governmental immunity under the facts of this cause. The real party in interest argues that the district, itself, is not cloaked with governmental immunity. She suggests that "the district" and its "Board of Trustees" are two separate entities with differing immunity attachments. 

A.
JCEMSD Governance.
¶13 In 1976, Oklahoma voters approved State Question 522, which amended article 10 of the Oklahoma Constitution by adding section 9C, relating to emergency medial service districts.[9] The provision allowed a special election to be called by boards of county commissioners, or voters in counties, to create a district for the purpose of support, organization, operation, and maintenance of ambulance services.[10] 

¶14 The districts are governed/operated by a board of trustees.[11] Regarding the capacity to sue and be sued, art. 10, §9C provides:

(o) The board of any district shall have capacity to sue and be sued. Provided, however, the board shall enjoy immunity from civil suit for actions or omissions arising from the operation of the district, so long as, and to the same extent as, municipalities and counties within the state enjoy such immunity. (Emphasis supplied.)

¶15 On August 24, 1982, the voters of Jackson County voted to approve the creation of the JCEMSD to provide medical services for Jackson County residents. The JCEMSD is governed by a board of trustees appointed by the Jackson County Board of County Commissioners. According to the JCEMSD By-Laws, the board of trustees' administrative office is located at 1309 N. Park Lane, Altus, Oklahoma. The board holds regular monthly meetings which are open to the public and governed by the Oklahoma Open Meeting Act, 25 O.S. 2021 §§301 et seq.[12] 
¶16 Jackson County levies ad valorem taxes designated to JCEMSD for its operation and support. However, Jackson County does not insure the JCEMSD as part of the Association of County Commissioners Oklahoma self-insured group because it does not consider the JCEMSD a governmental entity or part of the county. Rather, the JCEMSD secures private insurance.

¶17 The JCEMSD also follows the Emergency Medical Service District Budget Act, 19 O.S. 2021 §§1701 et seq.[13] to provide an accounting to the public.[14] The Oklahoma State Auditor and Inspector publishes a statutory audit report regarding JCEMSD each fiscal year.[15] The Oklahoma Department of Health licenses the JCEMSD to conduct and maintain an ambulance service.
B.
The Nature of Such Entities.
¶18 The nature of entities like the medical district has long been discussed by this Court as well as the Oklahoma Attorney General. For instance, the Court in Board of County Commissioners of Lincoln County v. Robertson, 1913 OK 164, ¶7, 130 P. 947, held that a board of county commissioners acting as commissioners for a drainage district had the authority to hire attorneys, and that the county attorney was not responsible for such representation. The Court noted that a drainage district is a separate, independent, and distinct entity from the county. It was not brought into existence or created for the purpose of either the county, township, or any other species of municipal government.
¶19 In 1948, the Court in Armstrong v. Sewer Improvement Dist. No. 1, 1948 OK 198, ¶4, 199 P.2d 1012 held that sewer improvement districts were not organized for political or governmental purposes and do not possess political or governmental powers other than those necessary to carry out the specific purposes for which they are created. They were in no sense additions to, or agencies in aid of the general government of the state, or in aid of any governmental agencies or functions, but were purely for the purpose of promoting the welfare and benefit of the inhabitants of that particular district.
¶20 In 1977, the Oklahoma State Attorney General issued an opinion in 1977 OK AG 208. In it, the Attorney General, relying on Robertson, supra, determined a district attorney could not represent the board of trustees of an emergency medical services district because there was nothing to indicate that the district, the board, or its members were county officers. The Attorney General determined that medical districts were separate, independent, and distinct entities from the county and were not brought into existence or created for the purpose of either the county, township, or any other species of municipal government.
¶21 Similarly, in 1983 OK AG 154, the State Attorney General made four determinations regarding medical districts. First, they were required to establish a fiscal year beginning on July 1, of each year. Second, the medical district board of trustees were subject to state nepotism laws. Third, their meetings must comply with the Open Meetings Act. Fourth, their employees were not employees of the county, but rather were employees of the district.
¶22 The next year, in 1984 OK AG 149, the Attorney General addressedwhether medical districts were eligible employers, for purposes of the Oklahoma Public Employees Retirement Act.[16] In other words, was a medical district a governmental entity, like the state, a county, city, or town? The Attorney General determined that they were not the equivalent of such entities. The Attorney General relied on Armstrong, supra to determine that emergency medical districts were not political corporations or other subdivisions of the state under constitutional limitations of indebtedness.
¶23 Finally, in 2002 OK AG 4, the Attorney General determined that a medical district's board had the power and authority to employ legal counsel to represent it. The express language of the Oklahoma Constitution, our prior opinions, the Attorney General's prior reviews, along with the facts relating to the structure and operation of the medical district, are all persuasive in this cause.
¶24 Clearly, the medical districts, which are authorized to be created by the Okla. Const. art. 10 §9C, are a unique entity with both non-governmental and quasi-governmental aspects. They are not governed by any typical governmental entity such as the state, the county, or a municipality, or created to be run by such. Rather, they are governed solely by a board of trustees, which is also created through the provisions of art. 10, §9C. There is no indication within the constitutional provision that "the district" and "the board of trustees" are completely separate entities and subject to differing liability laws. Instead, they are treated as one in the same, and with the board of trustees as officers and governing "the districts."
¶25 Regardless of how they are categorized, insofar as legal liability goes, the Constitution is quite clear. The Okla. Const. art. 10, §9C expressly provides in pertinent part: "the board shall enjoy immunity from civil suit for actions or omissions arising from the operation of the district, so long as, and to the same extent as, municipalities and counties within the state enjoy such immunity." (Emphasis supplied.) When the district is amenable to a lawsuit, the expressed entity to be sued is the medical district board of trustees, as its governing body. Because the two bodies are not distinctly created entities which can be separated from each other, the "board of trustees" should have been substituted for "the district" as the defendant in these proceedings.
¶26 The medical district, vis-a-vis the board of trustees, is subject to immunity from liability the same extent as municipalities and counties within the state enjoy such immunity. Consequently, any laws which govern the legal liability limits of municipalities and counties also generally apply to such medical districts, unless there are express provisions to the contrary.

II.
THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT, 51 O.S. 2021 §§151 et seq. IS APPLICABLE TO PRECLUDE RECOVERY.
¶27 The medical district argues that the GTCA applies, and that it cannot be held liable in this cause because workers compensation benefits have been previously awarded. The real party in interest argues that because the medical district is not a governmental entity, the GTCA is inapplicable.
¶28 In enacting the GTCA in 1984, the Oklahoma Legislature expressly adopted the doctrine of sovereign immunity, freeing the state and its political subdivisions and their employees acting within the scope of their employment, from liability for torts.[17] However, the Legislature also waived sovereign immunity by extending governmental accountability to all torts for which a private person or entity would be liable subject only to the act's specific limitations and exceptions.[18] In waiving sovereign immunity, the Legislature restricted the waiver to the extent and manner prescribed in the act.[19] 

¶29 The act applies to and governs liability of municipalities and counties.[20] Ordinarily, a non-governmental entity or quasi-governmental entity might not be governed by the GTCA. For example, in Sullin v. American Medical Response of Oklahoma, Inc., 2001 OK 20, 23 P.3d 259, we addressed the applicability of the GTCA to a private entity who contracted for services with a public trust. In Sullin, we said:

¶20 A private entity such as AMR is not an 'entity designated to act in behalf of the state or a political subdivision' merely because it contracts with a public trust to provide services which the public trust is authorized to provide. Notwithstanding the fact that it may be providing a public service, a private entity such as AMR does not act in the administration of government. It is not charged by law with the responsibility of conducting any public business. It is organized by private citizens pursuant to general corporate laws. It is not controlled by or answerable to the public, but is governed by its own board of directors. Its employees are not governmental employees. Except as it has voluntarily obligated itself by contract, it is not required to provide services or remain in existence. In summary, it possesses all the attributes of a private business enterprise, a non-governmental entity.

¶30 The entity in Sullins was not a medical district like the one here. On its face, it appears to have some of the same characteristics. For example, the medical district here provides a public service, but it does not act in the administration of government. It is not charged by law with the responsibility of conducting any public business. It is organized by and through private citizen voters. It is governed by its own board of directors. Its employees are not governmental employees. There is, however, one significant and determinative difference.
¶31 The GTCA currently includes a number of districts within the definition of political subdivision to which the GTCA applies.
[21] It neither expressly includes or excludes its application to medical districts such as the JCEMSD. Nevertheless, as we previously stated, the Oklahoma Constitution, art. 10 §9 expressly applies all liability laws which govern municipalities and counties the same extent to medical districts. We cannot ignore the express constitutional language. Consequently, the GTCA governs their liability the same as it governs the liability of municipalities and counties.
¶32 In this regard, the GTCA provides in 51 O.S. 2021 §155 that:

The state or a political subdivision shall not be liable if a loss or claim results from: . . .
14. Any loss to any person covered by any workers' compensation act or any employer's liability act;

This Court has, in three previous opinions, unanimously interpreted this section to mean that if a loss is covered by workers compensation, the state or political subdivision is precluded from liability. For example, in Childs v. State ex rel. Oklahoma State University, 1993 OK 18, ¶1, 848 P.2d 571, we answered the question of whether subsection 14s immunity extended to include its liability to persons not employed by the State of Oklahoma, but were covered for the injurious event by the workers' compensation regime of another state.
¶33 Childs concerned two Texas residents whose vehicle collided with a vehicle owned and operated by a State of Oklahoma employee. The Texans were in Oklahoma, in the course of employment with a private employer. One was injured and one was killed. The injured Texan and the deceased Texan's widow received workers compensation benefits from Texas. We held that subsection 14 applied to any loss to any person covered by any workers' compensation act or any employer's liability act. Consequently, the State of Oklahoma was immune from liability.
¶34 In Smith v. State ex rel. Deptartment of Transportation, 1994 OK 61, 875 P.2d 1147, the plaintiff was killed when he lost control of a tractor-trailer while driving on a state highway. His widow recovered workers' compensation wrongful death benefits and then attempted to sue the State for unsafe highway conditions. We held that subsection 14 grants the State immunity from liability. Finally, in Gladstone v. Bartlesville Independent School District No. 30, 2003 OK 30, ¶4, 66 P.3d 442, the decedent was killed when struck by a school bus driven by an employee of a school district. The deceased's widow received statutory worker's compensation death benefits from the decedent's employer. The Court reaffirmed that the widow was precluded from bringing a lawsuit against the school district pursuant to subsection 14 of §155 of the GTCA.
¶35 Additionally, in Farley v. City of Claremore, 2020 OK 30, 465 P.3d 1213, after a city fireman died while reponding to an emergency request, his widow brought a wrongful death lawsuit against the City of Claremore. The Court held that the city was immune from liability pursuant to the GTCA §155(14) because the same wrongful death injury was the basis of an award for death benefits made by the workers compensation commission.
¶36 Here, it is undisputed that workers compensation benefits have been paid as a result of this accident. The trial court should have dismissed the lawsuit and abstained from proceeding any further in this cause. Consequently, we assume original jurisdiction and grant the petitioners' request for a writ of prohibition.

CONCLUSION
¶37 The medical districts, created by the Okla. Const. art. 10 §9C, are a unique entity governed solely by a board of trustees, which is also created through the provisions of art. 10, §9C. The "district" and "board of trustees" are treated as one and the same, with the board of trustees as officers and governing "the districts." The Okla. Const. art. 10, §9C provides that the board is immune from civil suit for actions or omissions arising from the operation of the district, so long as, and to the same extent as, municipalities and counties within the state enjoy such immunity.
¶38 When the district is amenable to a lawsuit, the expressed entity to be sued is the medical district board of trustees, as its governing body. Because the medical district, vis-a-vis the board of trustees, is subject to liability to the same extent as municipalities and counties within the state enjoy such immunity, the GTCA governs the legal liability limits of such medical districts, unless there are express provisions to the contrary. Pursuant to the GTCA, this lawsuit is precluded because workers compensation benefits have previously been awarded.

ORIGINAL JURISDICTION ASSUMED; PETITION FOR WRIT OF PROHIBITION GRANTED.
ALL JUSTICES CONCUR.

FOOTNOTES
[1] Title 51 O.S. 2021 §155(14) provides in pertinent part:
The state or a political subdivision shall not be liable if a loss or claim results from: . . .
14. Any loss to any person covered by any workers' compensation act or any employer's liability act; . . .
Because the pertinent portions of the GTCA have insignificant changes by amendment, all references are to the current version of the Act.
[2] The Okla. Const. art 10, §9C, see note 10, infra.
[3] Title 51 O.S. 2021 §155(14), see note 1, supra.
[4] Title 51 O.S. 2021 §156 provides in pertinent part:
A. Any person having a claim against the state or a political subdivision within the scope of Section 151 et seq. of this title shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages.
B. Except as provided in subsection H of this section, and not withstanding any other provision of law, claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.
C. A claim against the state shall be in writing and filed with the Office of the Risk Management Administrator of the Office of Management and Enterprise Services who shall immediately notify the Attorney General and the agency concerned and conduct a diligent investigation of the validity of the claim within the time specified for approval or denial of claims by Section 157 of this title. A claim may be filed by certified mail with return receipt requested. A claim which is mailed shall be considered filed upon receipt by the Office of the Risk Management Administrator.

D. A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body. . . .

[5] According to the Petition for Intervention filed on March 30, 2022, CompSource had paid $51,648.21 in medical and indemnity benefits on behalf of Garst.
[6] Title 51 O.S. 2021 §155(14), see note 1, supra.
[7] The trial court signed the order on February 13, 2023, and it was filed the next day.
[8] The Supreme Court assumes original jurisdiction in the exercise of its general superintending control over all inferior courts and all agencies, commissions, and boards created by law. The Supreme Court has the power on original jurisdiction to correct an abuse of discretion or compel action where the action taken is arbitrary even though the officer is vested with judgment and discretion. Okla. Const. art. 7, §4. Before a writ of prohibition may issue, a petitioner must show: 1) a court, officer or person has or is about to exercise judicial or quasi-judicial power; 2) the exercise of said power is unauthorized by law; and 3) the exercise of that power will result in injury for which there is no other adequate remedy. Maree v. Neuwirth, 2016 OK 62, ¶6, 374 P.3d 750; Baby F. v. Oklahoma County Dist. Court, 2015 OK 24, ¶8, 348 P.3d 1080; James v. Rogers, 1987 OK 20, ¶5, 734 P.2d 1298.
[9] The Okla. Const. art. 10 §9C, was added by Laws 1976, SJR 54, Section 1, State Question 522, Legislative Referendum 217, and adopted at election held August 24, 1976. It was later amended by Laws 1998, HJR 1098, Section 1, State Question 678, Legislative Referendum 308, which was adopted at election held November 3, 1998.
[10] The Okla. Const. art. 10, §9C(a) provides:
(a) The board of county commissioners, or boards if more than one county is involved, may call a special election to determine whether or not an ambulance service district shall be formed. An election shall also be called by the board or boards involved upon petition signed by not less than ten percent (10%) of the registered voters of the area affected. Said area may embrace a county, a part thereof, or more than one county or parts thereof, and in the event the area covers only a part or parts of one or more counties, the area must follow school district boundary lines. All registered voters in such area shall be entitled to vote, as to whether or not such district shall be formed, and at the same time and in the same question authorize a tax levy not to exceed three (3) mills for the purpose of providing funds for the purpose of support, organization, operation and maintenance of district ambulance services, known as emergency medical service districts and hereinafter referred to as "districts." If the formation of the district and the mill levy is approved by a majority of the votes cast, a special annual recurring ad valorem tax levy of not more than three (3) mills on the dollar of the assessed valuation of all taxable property in the district shall be levied. The number of mills shall be set forth in the election proclamation, and may be increased in a later election, not to exceed a total levy of three (3) mills. This special levy shall be in addition to all other levies and when authorized shall be made each fiscal year thereafter.
Each district which is herein authorized, or established, shall have a board of trustees composed of not less than five members. Such trustees shall be chosen jointly by the board or boards of county commissioners, provided that such membership shall be composed of not less than one individual from each county or part thereof which is included in said district.
Original members of the board of trustees shall hold office, as follows: At the first meeting of said board, board members shall draw lots to determine each trustee's original length of term in office. The number of lots to be provided shall be equal to the number of original members of the board, and lots shall be numbered sequentially from one through five, with lots in excess of the fifth lot being also numbered sequentially from one through five until all lots are numbered. Each original member or members added by an expansion area of the board shall hold office for the number of years indicated on his or her lot. Each year, as necessary, the board or boards of county commissioners shall appoint successors to such members of the board of trustees whose terms have expired, and such subsequent appointments shall be for terms of five (5) years.
Such board of trustees shall have the power and duty to promulgate and adopt such rules, procedures and contract provisions necessary to carry out the purposes and objectives of these provisions, and shall individually post such bond as required by the county commissioners, which shall not be less than Ten Thousand Dollars ($10,000.00).
The district board of trustees shall have the additional powers to hire a manager and appropriate personnel, contract, organize, maintain or otherwise operate the emergency medical services within said district and such additional powers as may be authorized by the Legislature.
In lieu of counties creating such district, cities or towns were also authorized to create districts. The Okla. Const. art. 10, §9(p) provides:

(p) In lieu of proceeding to establish a district as outlined here in above through the county commissioners, the governing body of any incorporated city or town may proceed to form a district, join an existing district or join with other incorporated cities or towns in forming a district. In such case, said governing body shall be considered as being substituted as to the powers and duties of said county commissioners as set forth here in above; provided, further, said city or town shall be considered as being substituted as to the powers and duties of a district formed, as set forth here in above. All rights, duties, privileges and obligations of the residents and voters in such city or town shall be the same as those outlined for the district as set forth above.

[11] The Okla. Const. art.10, §9C(a), see note 10, supra.
[12] Title 25 O.S. 2021 §304 provides in pertinent part:
1. "Public body" means the governing bodies of all municipalities located within this state, boards of county commissioners of the counties in this state, boards of public and higher education in this state and all boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts or any entity created by a public trust including any committee or subcommittee composed of any of the members of a public trust or other legal entity receiving funds from the Rural Economic Action Plan Fund as authorized by Section 2007 of Title 62 of the Oklahoma Statutes, task forces or study groups in this state supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property, and shall include all committees or subcommittees of any public body. Public body shall not include the state judiciary, the Council on Judicial Complaints when conducting, discussing, or deliberating any matter relating to a complaint received or filed with the Council, the Legislature, or administrative staffs of public bodies including, but not limited to, faculty meetings and athletic staff meetings of institutions of higher education when those staffs are not meeting with the public body, or entry-year assistance committees. Furthermore, public body shall not include the multi disciplinary teams provided for in Section 1-9-102 of Title 10A of the Oklahoma Statutes, in Section 2 of this act, and in subsection C of Section 1-502.2 of Title 63 of the Oklahoma Statutes or any school board meeting for the sole purpose of considering recommendations of a multi disciplinary team and deciding the placement of any child who is the subject of the recommendations. Furthermore, public body shall not include meetings conducted by stewards designated by the Oklahoma Horse Racing Commission pursuant to Section 203.4 of Title 3A of the Oklahoma Statutes when the stewards are officiating at races or otherwise enforcing rules of the Commission. Furthermore, public body shall not include the board of directors of a Federally Qualified Health Center;
[13] Title 19 O.S. 2021 §1703 provides:
This act shall apply to all emergency medical service districts created pursuant to the provisions of Section 9C of Article X of the Constitution of the State of Oklahoma.
[14] Title 19 O.S. 2021 §1702 provides:
The purpose of this act is to provide a budget procedure for emergency medical service districts which shall:
1. Establish uniform and sound fiscal procedures for the preparation, adoption, execution and control of budgets;
2. Enable districts to make financial plans for both current and capital expenditures and to ensure that their directors administer their respective functions in accordance with adopted budgets;
3. Make available to the public and investors sufficient information as to the financial conditions, requirements and expectations of the district; and

4. Assist districts to improve and implement generally accepted accounting principles as applied to governmental accounting, auditing and financial reporting and standards of governmental finance management.

[15] Title 19 O.S. 2021 §1705 provides:
The State Auditor and Inspector, or his designee, shall advise districts on procedural and technical matters relating to accounting and budget procedures. It shall be the duty of the employees of the districts with notice of such advice to follow the instructions or advice of the State Auditor and Inspector until relieved of such duty by a court of competent jurisdiction or until the Supreme Court shall hold otherwise.
[16] Title 74 O.S. 1981 §902. The Act applied to the state, any county, county hospital, city or town, and any public trust or private trust in which a county, city or town participates.
[17] Title 51 O.S. 2021 §152.1 provides:
A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.
B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.
This section of the act has remained unchanged since its adoption in 1984, and it became effective October 1, 1985.
[18] Title 51 O.S. 2021 §152.1, supra at note 16.
[19] Title 51 O.S. 2021 §152.1, supra at note 16.
[20] Title 51 O.S. 2021 §152 provides in pertinent part:
. . .11. "Political subdivision" means:
a. a municipality,
b. a school district, including, but not limited to, a technology center school district established pursuant to Section 4410, 4411, 4420 or 4420.1 of Title 70 of the Oklahoma Statutes,

c. a county, . . .

[21] Title 51 O.S. 2021 §152 provides in pertinent part:
11. "Political subdivision" means: . . .
d. a public trust where the sole beneficiary or beneficiaries are a city, town, school district or county. . . .
e. for the purposes of The Governmental Tort Claims Act only, a housing authority created pursuant to the provisions of the Oklahoma Housing Authority Act,
f. for the purposes of The Governmental Tort Claims Act only, corporations organized not for profit pursuant to the provisions of the Oklahoma General Corporation Act for the primary purpose of developing and providing rural water supply and sewage disposal facilities to serve rural residents,
g. for the purposes of The Governmental Tort Claims Act only, districts formed pursuant to the Rural Water, Sewer, Gas and Solid Waste Management Districts Act,
h. for the purposes of The Governmental Tort Claims Act only, master conservancy districts formed pursuant to the Conservancy Act of Oklahoma,
i. for the purposes of The Governmental Tort Claims Act only, a fire protection district created pursuant to the provisions of Section 901.1 et seq. of Title 19 of the Oklahoma Statutes, . . .
l. for purposes of The Governmental Tort Claims Act only, a conservation district created pursuant to the provisions of the Conservation District Act,
m. for purposes of The Governmental Tort Claims Act only, districts formed pursuant to the Oklahoma Irrigation District Act, . . .
r. for purposes of The Governmental Tort Claims Act only, a circuit engineering district created pursuant to Section 687.1 of Title 69 of the Oklahoma Statutes,

s. for purposes of the Governmental Tort Claims Act only, a substate planning district, regional council of government or other entity created pursuant to Section 1001 et seq. of Title 74 of the Oklahoma Statutes, . . .

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
1977 OK AG 208, 
Question Submitted by: Dean Warren, District Attorney, LeFlore County
Cited

 
2002 OK AG 4, 
Question Submitted by: The Honorable Dale W. Wells, State Representative, District 33
Cited

 
1983 OK AG 154, 
Question Submitted by: The Honorable Guy Davis, Oklahoma House of Representatives
Cited

 
1984 OK AG 149, 
Question Submitted by: Rex Privett, Executive Director, Oklahoma Public Employees Retirement System
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 20, 734 P.2d 1298, 58 OBJ 716, 
James v. Rogers
Discussed

 
1913 OK 164, 130 P. 947, 35 Okla. 616, 
BOARD OF COUNTY COM'RS OF LINCOLN COUNTY v. ROBERTSON.
Discussed

 
1993 OK 18, 848 P.2d 571, 64 OBJ 745, 
Childs v. State ex rel. Oklahoma State University
Discussed

 
1948 OK 198, 199 P.2d 1012, 201 Okla. 531, 
ARMSTRONG v. SEWER IMPROVEMENT DIST. NO. 1
Discussed

 
2001 OK 20, 23 P.3d 259, 72 OBJ 573, 
SULLIN v. AMERICAN MEDICAL RESPONSE OF OKLAHOMA, INC
Discussed

 
1994 OK 61, 875 P.2d 1147, 65 OBJ 1944, 
Smith v. State ex rel. Dept. of Transportation
Discussed

 
2003 OK 30, 66 P.3d 442, 
GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed

 
2015 OK 24, 348 P.3d 1080, 
BABY F. v. OKLAHOMA COUNTY DISTRICT COURT
Discussed

 
2016 OK 62, 374 P.3d 750, 
MAREE v. NEUWIRTH
Discussed

 
2020 OK 30, 465 P.3d 1213, 
FARLEY v. CITY OF CLAREMORE
Discussed

Title 19. Counties and County Officers

 
Cite
Name
Level

 
19 O.S. 1701, 
Short Title
Cited

 
19 O.S. 1702, 
Purpose of Act to Provide Budget Procedure for Emergency Medical Service Districts
Cited

 
19 O.S. 1703, 
Act to Apply to All Emergency Medical Service Districts
Cited

 
19 O.S. 1705, 
State Auditor and Inspector to Advise Districts on Procedural and Technical Matters
Cited

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 301, 
Short Title
Cited

 
25 O.S. 304, 
Definitions
Cited

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 156, 
Claims - Petition - Limitation of Actions - Notice - Wrongful Death
Discussed

 
51 O.S. 155, 
Exemptions From Liability
Discussed at Length

 
51 O.S. 152, 
Definitions
Discussed

 
51 O.S. 151, 
Short Title
Cited

 
51 O.S. 152.1, 
Adoption of Doctrine of Sovereign Immunity
Discussed at Length

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 902, 
Definitions
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA